SCHELLENBERG v ROCHESTER, MICHIGAN, LODGE NO 2225 OF THE BENEVOLENT AND PROTECTIVE ORDER OF ELKS OF THE UNITED STATES OF AMERICA

Docket Nos. 185598, 186646, 191951. Submitted October 14, 1997, at Detroit. Decided February 10, 1998, at 9:05 A.M.

Sharon Schellenberg brought an action in the Oakland Circuit Court against Rochester, Michigan, Lodge No. 2225 of the Benevolent and Protective Order of Elks of the United States of America, alleging that the defendant's rejection of her application for membership constituted a gender-based denial of the full and equal enjoyment of the services of a place of public accommodation or public service in violation of § 302(a) of the Civil Rights Act, MCL 37.2302(a); MSA 3.548(302)(a). On stipulated facts, the court, Hilda R. Gage, J., decided that the defendant was a public club that was subject to the Civil Rights Act and that the defendant violated the act in rejecting the plaintiff's membership application on the basis of gender. The court ordered the defendant to reconsider the plaintiff's application without regard to gender and, pursuant to § 802 of the Civil Rights Act, MCL 37.2802; MSA 3.548(802), ordered the defendant to pay the plaintiff's cost and attorney fees. The court enhanced the attorney fee award by fifty percent in light of the risk of nonrecovery borne by the plaintiff's counsel. The Court of Appeals, WEAVER, P.J., and MCDONALD and NEFF, JJ., in an unpublished opinion per curiam, issued March 9, 1993 (Docket Nos. 123738, 131716), affirmed the trial court's decision regarding the applicability of the Civil Rights Act to the defendant and the defendant's violation of it, but reversed the enhancement of the attorney fee award and remanded the case to the trial court for a determination and award to the plaintiff of reasonable appellate attorney fees proportionate to her success on appeal. On remand and after the plaintiff's membership application, but not those of male applicants, was rejected in an election by secret ballot of the defendant's members, the trial court, on the plaintiff's request for injunctive relief, conducted evidentiary hearings at which it asked the voting members to reveal how they had voted on the plaintiff's application. The trial court decided that the plaintiff had established a prima facie case of sex discrimination under the Civil Rights Act and that the defendant failed to establish a legitimate nondiscriminatory reason for

rejecting the plaintiff's application. The trial court ordered that the plaintiff be admitted as a member of the defendant and ordered the defendant to pay some of the plaintiff's attorney fees and costs with interest pursuant to MCL 600.6013; MSA 27A.6013. The attorney fee award was set at ninety percent of the requested amount consistent with the trial court's belief that the plaintiff had been ninety percent successful. Some of the attorney fee award was also enhanced by the trial court. The defendant filed appeals from the trial court's order to admit the plaintiff as a member and from the trial court's award of costs, attorney fees, and interest, and the plaintiff cross appealed from one of the trial court's orders regarding costs, attorney fees, and interest. The Court of Appeals consolidated the appeals and stayed the proceedings in the trial court.

The Court of Appeals *held*:

1. Const 1963, art 2, § 4 protects the secrecy of the ballot at a governmental election, but not at an election held by a nongovernmental organization such as the defendant. The trial court therefore did not violate Const 1963, art 2, § 4 in requiring the defendant's members to reveal how they had voted on the plaintiff's membership application.

2. The trial court did not err in rejecting the defendant's proffered vote-counting analysis as rebuttal for the plaintiff's claim of sex discrimination. The trial court employed the proper test, under which the plaintiff had to establish disparate treatment or intentional discrimination, the defendant had to establish a legitimate nondiscriminatory reason for its actions, and the plaintiff had to establish that the defendant's proffered reason was a mere pretext.

3. The plaintiff established a prima facie case of sex discrimination under the intentional-discrimination theory and the disparate-treatment theory.

4. The plaintiff proved by a preponderance of the evidence that her gender was a "but for," or determining, factor for the rejection of her membership application.

5. The trial court did not clearly err in finding that the defendant did not establish a legitimate nondiscriminatory reason for rejecting the plaintiff's membership application in contending that it had rejected the application because the plaintiff intended to use the Elks for business purposes. The trial court did not clearly err in finding that this proffered reason was a pretext.

6. The trial court did not interfere with the defendant's right to administrate its internal affairs in ordering the defendant to admit the plaintiff as a member. Upon admission, the plaintiff will be subject to the defendant's rules and regulations.

7. The trial court did err in denying the defendant's motion for the trial judge's disqualification on the asserted ground of bias or prejudice. The defendant failed to demonstrate that the trial judge had a deep-seated favoritism or antagonism that would have made fair judgment impossible.

8. The trial court, in redetermining the attorney fee award, erred in concluding that the Court of Appeals' direction to award attorney fees "proportionate to plaintiff's success on appeal" meant that the trial court had to adopt a mathematical formula. However, a remand for recalculation of attorney fees is not required inasmuch as the trial court did not abuse its discretion in deciding that the plaintiff was entitled to ninety percent of the requested attorney fees. The award was reasonable in light of the factors enunciated in *Crawley v Schick*, 48 Mich App 728 (1973), for determining the reasonableness of attorney fees.

9. The trial court did not abuse its discretion in ordering the defendant to pay interest pursuant to MCL 600.6013; MSA 27A.6013 on the award of costs and attorney fees from the date of the Court of Appeals' prior opinion in this case until July 25, 1995. However, the trial court erred in determining that for the period thereafter interest pursuant to § 6013 could not be awarded in light of amendments of § 6013 enacted in 1993 PA 78. Those amendments do not apply to cases filed before October 1, 1993, such as this case. On remand, interest on attorney fees should be awarded pursuant to § 6013(6).

10. The trial court did not abuse its discretion in awarding a twenty-five percent enhancement of appellate attorney fees incurred from February 5, 1993, through June 13, 1994. The plaintiff proved that it would have been extremely difficult to attract competent counsel without the possibility of enhancement of the attorney fee.

11. The plaintiff is entitled to an award of attorney fees incurred in defending the instant appeals, MCL 37.2802; MSA 3.548(802). On remand, the trial court shall determine and award to the plaintiff reasonable attorney fees so incurred.

Affirmed in part, reversed in part, and remanded.

1. CONSTITUTIONAL LAW — SECRECY OF BALLOTS — NONGOVERNMENTAL ELECTIONS.

The secrecy of the ballots at governmental, but not nongovernmental, elections is protected by the Michigan Constitution (Const 1963, art 2, § 4).

2. CIVIL RIGHTS — CIVIL RIGHTS ACT — EQUAL AND FULL ENJOYMENT OF PUBLIC ACCOMMODATIONS.

A claim under the Civil Rights Act for the alleged denial of the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of religion, race, color, national origin, age, sex, or marital status should be tested in the same manner as other claims under the Civil Rights Act: the plaintiff must show either disparate treatment or intentional discrimination; if the plaintiff does so, the defendant must establish a legitimate reason for its actions; and, if the defendant does so, the plaintiff must show that the proffered reason is a pretext (MCL 37.2302[a]; MSA 3.548[302][a]).

3. JUDGES — DISQUALIFICATION — BIAS OR PREJUDICE.

A judge, absent actual personal bias or prejudice, will not be disqualified; opinions formed by a judge on the basis of facts introduced or events occurring during the course of the current or prior proceedings do not constitute bias or partiality unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible (MCR 2.003[B][1]).

4. ATTORNEY AND CLIENT — FEES — REASONABLENESS.

Facts to be taken into consideration in determining the reasonableness of attorney fees include, but are not limited to, the following: the professional standing and experience of the attorney; the skill, time, and labor involved; the amount in question and the results achieved; the difficulty of the case; the expenses incurred; and the nature and length of the professional relationship with the client.

5. JUDGMENTS — INTEREST — CIVIL RIGHTS — ATTORNEY FEES — COSTS.

An award of attorney fees and costs in a case arising under the Civil Rights Act is a money judgment for purposes of the statute that allows interest on money judgments (MCL 37.2802, 600.6013; MSA 3.548[802], 27A.6013).

6. CIVIL RIGHTS — ATTORNEY FEES — ENHANCEMENT.

The trial court in a civil rights case has limited discretion to award attorney fees beyond the requested amount; enhancement is appropriate for those rare circumstances where an attorney's work is so superior and outstanding that it exceeds the client's expectations or where enhancement is necessary to attract competent counsel (MCL 37.2802; MSA 3.548[802]).

*Michael C. Curhan* and *Anne T. France,* for Sharon Schellenberg.

*Varnum, Riddering, Schmidt & Howlett, LLP* (by *Robert J. Eleveld, Richard A. Hooker,* and *James R. Stadler*), for Rochester, Michigan, Lodge No. 2225 of the Benevolent and Protective Order of Elks of the United States of America.

Before: MACKENZIE, P.J., and SAWYER and NEFF, JJ.

PER CURIAM. This case returns to this Court after remand and represents the latest chapter in the continuing saga of the Elks' attempts to prohibit female members. The underlying issues involve § 302 of the Civil Rights Act, MCL 37.2302; MSA 3.548(302), which prohibits the denial of access to, and enjoyment of, services provided by places of public accommodation and public service because of gender. This case also raises issues involving attorney fees.

In Docket No. 185598, defendant, the Elks, appeals as of right and plaintiff, Sharon Schellenberg, cross appeals from the order of May 2, 1995, which ordered defendant to accept plaintiff as a member and afford to her full and equal enjoyment of the goods, services, privileges, and accommodations offered by the Elks to its members. We affirm.

In Docket No. 186646, defendant appeals as of right and plaintiff cross appeals from the order of May 25, 1995, which granted plaintiff's renewed motion to determine the scope of recoverable attorney fees, and the order of June 20, 1995, which modified the May 25, 1995, order. These orders, after modification, provided that plaintiff was ninety percent successful on her appeal and ordered defendant to pay plaintiff's reasonable attorney fees and costs in the amount of $25,714 for the period from December 14, 1989, until February 4, 1993, plus statutory interest, pursuant to

MCL 600.6013; MSA 27A.6013, to run from March 3, 1993. We affirm.

In Docket No. 191951, defendant appeals as of right and plaintiff cross appeals from the order of December 22, 1995, for payment of attorney fees, which provided that (1) defendant shall pay plaintiff $26,424 for appellate attorney fees and costs for the period from February 5, 1993, until June 13, 1994, (2) plaintiff's award of appellate attorney fees incurred from February 5, 1993, until June 13, 1994, shall be reduced by ten percent, (3) defendant shall pay plaintiff a twenty-five percent enhancement on the appellate attorney fees incurred from February 5, 1993, until June 13, 1994, (4) defendant shall pay plaintiff $85,576 for pos-tremand attorney fees and costs from June 14, 1994, until July 19, 1995, and (5) defendant shall pay interest on the entire award, from and after July 25, 1995, at a rate equal to the percentage rise in the consumer price index, all cities average, compounded annually, based upon the April-April indices. We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

STATEMENT OF FACTS FOR DOCKET NO. 185598

The underlying facts pertinent to the issues raised in Docket No. 185598 are set forth in *Schellenberg v Rochester Michigan Lodge No 2225*, unpublished opinion per curiam of the Court of Appeals, decided March 9, 1993 (Docket Nos. 123738, 131716):

In 1988, plaintiff applied for membership in defendant organization. Her application was rejected because of her gender. Plaintiff instituted this action, claiming she was denied the full and equal enjoyment of the services of a place of public accommodation or

public service on the basis of gender in violation of the Civil Rights Act, MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.* Defendant defended its actions, claiming that it was a private club exempt from the act. MCL 37.2303; MSA 3.548(303).

The case was submitted to the trial court for a judgment on stipulated facts pursuant to MCR 2.116(A). In a November 15, 1989, opinion and order, the trial court found defendant's gender-based rejection of plaintiff's application violative of the act. Defendant was ordered to reconsider plaintiff's application without consideration of gender.

Defendant appealed. This Court found that defendant was subject to § 302 of the Civil Rights Act, MCL 37.2302; MSA 3.548(302), because it was a place of public accommodation and public service and lacked the selectivity necessary to be considered a private club exempt from the act. The Court affirmed the trial court's determination that defendant was subject to article three of the act. Moreover, the Court concluded that defendant was not a private club exempt from the act pursuant to § 303. The trial court's order that defendant reconsider plaintiff's application without consideration of gender was affirmed.

The matter was remanded to the trial court. On June 13, 1994, seventy-one members of the Elks showed up to vote on plaintiff's application for membership. Fifty-eight voted against membership for plaintiff and thirteen voted for plaintiff. The members also voted on seven male applicants that evening. All were voted in as new members.

On June 24, 1994, plaintiff requested equitable relief. She asked the trial court to order defendant to accept her as a member with full and equal enjoy-

ment of the services, facilities, privileges, and advantages of the club and that the Elks and its members be permanently enjoined from denying her the full and equal enjoyment of the club as long as she continued to pay her dues. Plaintiff also requested attorney fees under the Civil Rights Act and that defendant be held in contempt of court if it refused to comply with the order.

Defendant informed the court that immediately before the vote on June 13th, fifty-eight Elks members signed an affirmation/oath that they would not vote on the basis of gender. Defendant requested an evidentiary hearing. The court held that plaintiff had established a prima facie case and the burden shifted to defendant to establish a legitimate nondiscriminatory reason why its members denied membership to plaintiff.

Thirty-one of the Elks members who voted against plaintiff's application testified at the evidentiary hearing. Following the testimony and arguments by the parties, in a written opinion entered on April 19, 1995, the court found in plaintiff's favor. An order reflecting the court's opinion was entered on May 2, 1995.

In its opinion, the court held that the evidence clearly established plaintiff's prima facie case that she was treated differently from any man. The court noted that "[M]en who are otherwise qualified are admitted routinely, [but] [p]laintiff's application was overwhelmingly rejected by men who did not know her." The court further determined that defendant's proffered legitimate reason for the denial of plaintiff's membership, that plaintiff intended to use the club for business purposes, was a pretext.

Defendant appealed on May 5, 1995. This Court granted a stay of the order on June 12, 1995. Defendant raises several issues on appeal from the trial court's opinion.

I

Defendant claims that the trial court violated Const 1963, art 2, § 4 when it required the Elks to reveal how its members voted. Defendant contends that the Michigan Constitution guarantees the secrecy of the ballot even with respect to a private institution. We disagree.

Although defendant referred to this issue at two hearings, it was never formally brought before the trial court as an issue on which the court should rule, and the trial court never rendered an opinion with regard to this question. An issue not addressed by the trial court is not preserved for appeal. *Federated Publications, Inc v Michigan State Univ Bd of Trustees*, 221 Mich App 103, 119; 561 NW2d 433 (1997). An exception to this rule applies when the issue involves constitutional rights. *People v Grant*, 445 Mich 535, 546-547; 520 NW2d 123 (1994). Accordingly, the Court may address this issue.

Questions of law are subject to review de novo. *Bieszck v Avis Rent-A-Car System, Inc*, 224 Mich App 295, 297; 568 NW2d 401 (1997). A new trial is appropriate when an error of law has occurred in the proceedings. *Id.*

Defendant relies on *Belcher v Ann Arbor Mayor*, 402 Mich 132, 134; 262 NW2d 1 (1978). In *Belcher*, the mayor won the mayoral election by one vote. The plaintiff alleged illegal votes were cast because twenty of the voters did not live within the city and

therefore were unqualified to vote, even though properly registered. *Id.* at 133. It was discovered that seventeen voters had mistakenly been registered in Ann Arbor and had voted in good faith. The trial court permitted the plaintiff to ask each illegal voter for whom the voter had voted. *Id.* Two voters refused to answer on the ground that they had a legal right not to reveal for whom they had voted. They were held in contempt. This Court denied leave, and the Supreme Court granted the motion for immediate consideration. The Court held that "a citizen's right to a secret ballot *in all elections as guaranteed by Const 1963, art 2, § 4,* cannot be so abrogated in the absence of a showing that the voter acted fraudulently." (Emphasis added.) *Id.* at 134.

Defendant concedes that *Belcher* involved a political election, but argues that sound public policy dictates the same protection should apply in a secret ballot election in a private setting. We disagree.

This is an issue of first impression. We hold that Const 1963, art 2, § 4 does not protect the secrecy of the ballot at an election held in a nongovernmental organization. Const 1963, art 2, § 4, deals with governmental elections, not with private or organizational elections. Art 2, § 4, addresses the right of the Legislature to promulgate laws and define terms regarding governmental elections, establishing the qualifications of electors, the place and manner of elections, the time of elections, and other special provisions. Section 4 of article 2, upon which defendant relies, states:

> The legislature shall enact laws to regulate the time, place and manner of all nominations and elections, except as otherwise provided in the constitution or in the constitu-

tion and laws of the United States. The legislature shall enact laws to preserve the purity of elections, *to preserve the secrecy of the ballot,* to guard against abuses of the elective franchise, and to provide for a system of voter registration and absentee voting. No law shall be enacted which permits a candidate in any partisan primary or partisan election to have a ballot designation except when required for identification of candidates for the same office who had the same or similar surnames. (Emphasis added.)

This provision gives to the Legislature the responsibility to enact laws that preserve the secrecy of the ballot in governmental elections. It does not guarantee the secrecy of the ballot to a voter in a nongovernmental election.

We hold that the type of elections conducted by the Elks, which occur on a random basis whenever there are several applicants for membership and consist of placing black or white balls in boxes, is neither included by the Michigan Constitution among those elections the Legislature is empowered to regulate nor entitled to the protections expressed there. The Elks, in its membership elections, does not require its members to be registered voters, nor does it follow any of the state laws regarding voting. Voting on club membership cannot be compared with voting for government officials. The membership of an organization may determine to have private balloting and may implement a voting system that assures privacy within the organization, but the constitution does not require courts to honor that secrecy when there are allegations that the process promotes illegal discrimination. The Elks is not a governmental organization. It is a place of public accommodation. Its members have no constitutional right to refuse to disclose how they voted or why they voted against plaintiff.

II

Defendant claims that plaintiff did not prove that she would have been a member but for her sex because even if all the witnesses were lying, she still would not have received the required number of affirmative votes. Defendant presents a mathematical formula that it contends must be used to determine whether plaintiff would have received a sufficient number of affirmative votes.

Appellate courts review questions of law for error. *People v Thomas*, 438 Mich 448, 452; 475 NW2d 288 (1991). Questions of law are subject to review de novo. *Bieszck, supra* at 297. A new trial is appropriate when an error of law has occurred in the proceedings. *Id.*

In its opinion, the trial court held, in pertinent part:

> Counsel for both parties argued at length regarding the tallying of individual votes to determine whether the defendant discriminated against the plaintiff. *There is no precedent for this kind of vote counting analysis advocated by either party.* Plaintiff was not obligated to show that discrimination was the exclusive reason for denying her membership. *Jenkins v American Red Cross*, 141 Mich App 785, 794 [369 NW2d 223] (1985). Plaintiff may recover if sex discrimination played a significant role in the decision. *Pomranky v Zack Co*, 159 Mich App 338, 344 [405 NW2d 881] (1987). "Discrimination, whether based on race, religion, sex or age, cannot be tolerated in a free society regardless of whether the objective sought thereby could be partially justified but [sic] some other, legitimate reasons." *Id.*, citing *Gallaway v Chrysler Corp*, 105 Mich App 1, 6 [306 NW2d 368] (1981). *Regardless of the number of tainted votes, plaintiff has shown that discrimination played a significant role in the decision to discriminate against her.* (Emphasis added.)

This Court concludes that the trial court did not commit an error of law. In *Clarke v K Mart Corp*, 197 Mich App 541, 545; 495 NW2d 820 (1992), the Court explained the test to be used for an alleged violation of § 302 of the Civil Rights Act, which prohibits discrimination in a place of public accommodation:

> We believe that the appropriate test is the same as that used under other sections of the Civil Rights Act. Plaintiff must first show either disparate treatment or intentional discrimination; if the plaintiff does so, defendant must establish a legitimate reason for its actions; if the defendant does so, plaintiff must then show that the reason proffered are [sic] mere pretext by showing that they lack credibility or that a discriminatory motive was a more likely reason for the action.

We find that the trial court did not err in finding there is no precedent for defendant's proffered vote-counting analysis. *Clarke* established that the burden-shifting test used under other sections of the Civil Rights Act is appropriate under § 302. The fact that the discrimination in this case was evidenced by a vote of members of an organization is not sufficient reason to formulate a new test.

III

Defendant claims that plaintiff failed to establish a prima facie case of unlawful sex discrimination. We disagree. A prima facie case of intentional sex discrimination can be made by proving either intentional discrimination or disparate treatment. *Reisman v Wayne State Univ Regents*, 188 Mich App 526, 538; 470 NW2d 678 (1991).

A

In order to establish a prima facie case of intentional sex discrimination under § 302, a plaintiff must show that she was a member of a protected class, that she was discriminated against at a place of public accommodation, that the defendant was predisposed to discriminate against persons in the class, and that the defendant acted upon that disposition when the discrimination occurred. *Clarke, supra*; *Coleman-Nichols v Tixon Corp*, 203 Mich App 645, 651; 513 NW2d 441 (1994).

We find that plaintiff established a prima facie case of intentional sex discrimination. She is a member of a protected class, and the Elks has been deemed a place of public accommodation. Defendant is predisposed to discriminate against women by its rules and by-laws, which provide that no woman may be a member, and by the fact that it has never accepted a woman as a member. Defendant acted upon that predisposition when plaintiff's application was denied while at the same time seven male applicants were voted into membership.

B

In order to establish a prima facie case of sex discrimination under the disparate-treatment theory, a plaintiff must show that she was a member of a class deserving of protection under the statute, and that, for the same conduct, she was treated differently than a man. It is the plaintiff's burden to establish a prima face case of sex discrimination with evidence that is legally admissible and sufficient. *Schultes v Naylor*, 195 Mich App 640, 645; 491 NW2d 240 (1992).

We find that plaintiff established a prima facie case of disparate treatment. She is a member of a protected class, she lives in the required area for membership, she applied for membership along with seven males, she and the seven males were approved for membership by the examining committee, all the males were accepted as members, and plaintiff was overwhelmingly rejected.

The essence of a sex discrimination civil rights suit is that similarly situated people have been treated differently because of their sex. *Radtke v Everett*, 442 Mich 368, 379; 501 NW2d 155 (1993). Defendant argues that plaintiff did not establish a prima facie case because she was *not* similarly situated. Defendant contends plaintiff was the only applicant who wanted to join for business reasons. However, the members' belief about plaintiff's motivation for wanting to join is not considered in the determination whether plaintiff established a prima facie case. That evidence is properly included in defendant's proffered showing of its nondiscriminatory reason for the vote. Accordingly, we find that the trial court did not err in its determination that plaintiff had established a prima facie case of sex discrimination.

IV

Defendant claims that plaintiff did not prove by a preponderance of the evidence that the fact she was a woman was a "but for" or determining factor for the rejection of her application. Defendant relies on *Matras v Amoco Oil Co*, 424 Mich 675, 682; 385 NW2d 586 (1986), an age discrimination case. Its holding also applies in this case, *Clarke, supra*, but does not support defendant's position. The *Matras* Court held:

> In [a sex] discrimination case, the question thus becomes whether the plaintiff has presented evidence " 'which, when viewed in the light most favorable to the plaintiff, would permit a reasonable jury to find that [s]he was [rejected for membership] because of [her sex].' " . . .
>
> A jury can find that the [rejection] was "because of [sex]" even if [sex] was not the sole factor. As accurately expressed in the Michigan Standard Jury Instruction, "[sex] does not have to be the only reason, or even the main reason, but it does have to be one of the reasons which made a difference in determining whether or not to [discriminate against] the plaintiff." Another formulation would be that [sex] is a determining factor when the unlawful adverse action would not have occurred without [sex] discrimination. Alternative expressions of the determining factor concept are "but for causation" or "causation in fact." [*Id.* at 682.]

Under this standard, we find that plaintiff proved by a preponderance of the evidence that her application was rejected because she was a woman. Even if plaintiff's gender was not the sole factor or even the main reason for defendant's refusal to admit her as a member, the evidence clearly showed that it was "one of the reasons which made a difference" in determining whether to vote for or against her. Considering that the witnesses could give only a few examples out of hundreds of applications over their many years of membership where a "no" vote was cast, it is clear that new members were routinely voted in. The preponderance of the evidence demonstrated that the "unlawful adverse action" would not have occurred if plaintiff had been a male. Just as the other seven applicants, all males, who were not known to the witnesses, were voted in as new members, had plaintiff been a male she would have been voted in without question. Accordingly, we find that plaintiff has satis-

fied the "but for" test by a preponderance of the evidence.

V

Defendant claims that the trial court clearly erred in finding that defendant did not establish legitimate non-discriminatory reasons for rejecting plaintiff's application for membership. Again, we disagree. This Court reviews the trial court's factual findings for clear error. *Webb v Smith (After Remand)*, 204 Mich App 564, 568; 516 NW2d 124 (1994). Findings of fact by the trial court may not be set aside unless clearly erroneous. In applying this principle, regard shall be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it. MCR 2.613(C). A finding is clearly erroneous when, although there is evidence to support the finding, this Court is left with a definite and firm conviction that a mistake has been made. *Berry v State Farm Automobile Ins Co*, 219 Mich App 340, 345; 556 NW2d 207 (1996).

Defendant claims that it established several legitimate, nondiscriminatory reasons for rejecting plaintiff's application. We have reviewed the record with respect to each of these proffered reasons. Even where it can be concluded that there was some grain of truth behind one or two of the allegations against plaintiff, we are not left with a definite and firm conviction that the trial court made a mistake when it found that plaintiff's sex played a significant role in the decision to deny her application for membership.

The trial court found that defendant's primary proffered reason for rejecting plaintiff's application, that plaintiff intended to use the Elks for business pur-

poses, was "pretext for several reasons." The court explained:

> First, most of the witnesses had no clear recollection of where they acquired this information. Moreover, it is clear that this rule is not strictly enforced by the club given that it accepts paid business advertisements from its members, does business with its members and its members routinely do business with each other. Second, many of the witnesses who offered this reason also testified to their own gender bias, testifying that they would prefer no female members. Finally many of the witnesses simply did not appear credible when they testified about their fear that the club might be used to further plaintiff's business as a realtor. These same witnesses appeared credible and comfortable with their testimony when they testified to their personal preferences regarding female membership.

We find that the trial court did not err in finding that the primary proffered reason for the vote against plaintiff was a pretext. The court did not specifically address the other proffered reasons because, regardless of the other reasons given, almost every witness stated that he voted against plaintiff because he believed she wanted to use the Elks for business purposes. The law does not require that every stated reason must be a pretext. The law requires that plaintiff's sex must have been a "determining factor" in that the adverse action would not have occurred without the sex discrimination. Sex does not have to be the only reason or even the main reason, but it must be one of the reasons that made a difference. *Matras, supra.*

As the trial court stated, plaintiff did not have to show that discrimination was the exclusive reason for denying her membership but merely that it played a significant role in the decision. The trial court found that male applicants are rarely given the significant

scrutiny to which plaintiff was subjected. Plaintiff had been recommended for membership by the investigating committee. With very few exceptions over the years, all applications for membership have been approved by the members. The exceptions involved situations where the applicant was known personally to the voter as a criminal or troublemaker. All the witnesses testified that they usually did not know anything about an applicant, other than that he had been sponsored by a member and recommended by the investigating committee, the same as plaintiff. None of the witnesses knew plaintiff personally. Many of the witnesses testified that they wished the Elks to remain all male. Several witnesses testified that they believed if they voted in a woman member, they would lose their national charter. The court found that this evidence supported its conclusion that plaintiff was discriminated against because of her sex.

Upon review of the testimony of the thirty-one member witnesses who voted against plaintiff, and acknowledging that credibility is a matter for the trial court to determine, we conclude that the findings of the trial court were not clearly erroneous.

VI

Defendant claims the trial court erred because it improperly interfered with the internal membership decisions and procedures of the Elks. By forcing defendant to accept plaintiff as a member, defendant contends the court improperly interfered with its right to administrate its own internal affairs. Defendant contends that the trial court impermissibly rewrote the rule against soliciting business from fellow members, which is clearly prohibited by the Elks.

We find that this issue is without merit. The trial court determined that the Elks discriminated against plaintiff because of her sex, and ordered that it make her a member. The court did not change any rule or regulation of the organization. Plaintiff, along with receiving the "full and equal enjoyment of the goods, services, privileges and accommodations offered by the defendant to its members" will also be subject to the rules and regulations of the organization.

VII

Defendant moved to disqualify the trial judge on the basis of a newspaper article that portrayed the judge as a feminist. Defendant argues that, given the trial judge's background and her comments on the record, she should have disqualified herself.

Absent actual personal bias or prejudice, a judge will not be disqualified. MCR 2.003(B)(1); *Cain v Dep't of Corrections*, 451 Mich 470, 495; 548 NW2d 210 (1996). Opinions formed by a judge on the basis of facts introduced or events occurring during the course of the current proceedings, or of prior proceedings, do not constitute bias or partiality unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. *Id.* at 496. Likewise, judicial remarks during the course of a trial that are "critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Id.* at 497, n 30. Moreover, a party who challenges a judge on the basis of bias must overcome a heavy presumption of judicial impartiality. *Id.* at 497.

We reject defendant's contention that the trial court was biased against defendant and breached its duty

to remain impartial. Defendant has failed to demonstrate that the trial judge had a deep-seated favoritism or antagonism that would have made fair judgment impossible. The court's remarks were within the bounds of "what imperfect men and women . . . sometimes display." *Id.* at 497, n 30; *Liteky v United States*, 510 US 540, 555; 114 S Ct 1147; 127 L Ed 2d 474 (1994). Defendant has failed to overcome the heavy presumption of judicial impartiality. The trial court did not err in denying defendant's motion for the court to recuse itself.

STATEMENT OF FACTS FOR DOCKET NOS. 186646 AND 191951

Docket Nos. 186646 and 191951 address issues regarding attorney fees. In this Court's prior decision in this case, this Court affirmed the trial court's award of $35,000 in attorney fees:

> In this case the trial court awarded $35,000 in attorney fees finding plaintiff's counsel was experienced in civil rights litigation; the case required significant skill and time, the case was difficult because it presented issues involving undeveloped areas of the law; civil and constitutional rights were involved and added to the value of the case even though plaintiff did not seek money damages; and that plaintiff's counsel achieved everything her client was entitled to receive. Defendant objects to the award not on the grounds that the hourly rate applied by the court was excessive, but that the award reimburses time plaintiff's counsel worked on unsuccessful claims. We disagree.
>
> Plaintiff's statement of legal services provided sufficient detail to allow the trial court to determine plaintiff's counsel was not charging for time spent on distinctly separate unsuccessful claims. We do not believe work related to the tort claim was clearly distinct from that related to the discrimination claim. *Hensley v Eckerhart*, 461 US 424; 103 S Ct 1933; 76 L Ed 2d 40 (1983). We find no abuse of discretion in this award.

This Court vacated the trial court's fifty percent fee enhancement, however, finding that the trial court erred in relying on plaintiff's counsel's risk of nonrecovery. This Court further noted that plaintiff failed to demonstrate any substantial difficulty in obtaining counsel and that counsel's performance did not so far exceed client expectations and normal levels of competence to warrant the fee enhancement.

Regarding plaintiff's request for appellate attorney fees, this Court held:

Finally, plaintiff seeks to recover attorney fees incurred defending this appeal. Such an award is proper under the act. MCL 37.2802; MSA 3.548(802); *McLemore v Detroit Receiving Hosp*, [196 Mich App 391; 493 NW2d 441 (1992).]We therefore remand to the trial court for determination and *award of reasonable appellate attorney fees proportionate to plaintiff's success on appeal*. (Emphasis added.)

DOCKET NO. 186646

On May 10, 1995, plaintiff argued her renewed motion for appellate attorney fees. The period under consideration was from December 14, 1989, when the trial court stayed the order that required the Elks to process plaintiff's application for membership, to June 13, 1994, when the Elks voted on plaintiff's application. At issue were (1) how to interpret the Court of Appeals instruction to award "reasonable appellate attorney fees proportionate to plaintiff's success on appeal" and (2) fee enhancement.

The trial court found that, under the law of the case doctrine, it was required to proportion the attorney fees. Finding that plaintiff was ninety percent

successful on appeal, the court awarded the attorney fees with a ten percent discount. The court further awarded costs and statutory interest, pursuant to MCL 600.6013; MSA 27A.6013, from and after March 3, 1993. The order was entered on May 26, 1995. It was modified on June 20, 1995, after plaintiff's attorney realized that he made a mistake on the dates, to provide that the award included only those attorney fees and taxable costs incurred from December 14, 1989, until February 4, 1993.

DOCKET NO. 191951

There are two awards of attorney fees at issue in Docket No. 191951: (1) the appellate fees awarded from February 5, 1993, until June 13, 1994, and (2) the postremand, trial-level attorney fees incurred from June 14, 1994, through July 19, 1995.

The trial court ordered defendant to pay plaintiff $26,424 in appellate attorney fees and costs from February 5, 1993, until June 13, 1994, and $85,576 for attorney fees and costs incurred from June 14, 1994, until July 19, 1995. Plaintiff's award of appellate attorney fees incurred from February 5, 1993, until June 13, 1994, was reduced by ten percent, but defendant was ordered to pay a twenty-five percent enhancement on the appellate attorney fees incurred from February 5, 1993, until June 13, 1994.

Finding that MCL 600.6013; MSA 27A.6013, as amended, did not apply in this case, the court ordered defendant to pay interest on the entire award, from and after July 25, 1995, at a rate equal to the percentage rise in the consumer price index, all cities average, compounded annually, based upon the April-April indices.

I. ATTORNEY FEES AND COSTS

Defendant contends that the trial court erred in finding that plaintiff was ninety percent successful on appeal. This Court remanded to the trial court "for determination and award of reasonable appellate attorney fees proportionate to plaintiff's success on appeal." This Court did not instruct the trial court with regard to the procedure or method it should use to determine the proportionality of plaintiff's success on appeal or cite any case law that the trial court could use as guidance. The trial court determined that it was required to proportion the attorney fee award on the basis of its finding that plaintiff was ninety percent successful.

Defendant presents two alternative formulas for an "award . . . proportionate to plaintiff's success on appeal." Under its first formula, defendant argues that plaintiff would be fifty percent successful. Under its second formula, plaintiff would be seventy-five percent successful. Plaintiff asks the Court to follow federal law that provides that a prevailing party may recover the full amount of attorney fees, even when it did not prevail on every claim or issue. We reject both parties' arguments.

Section 802 of the Civil Rights Act, MCL 37.2802; MSA 3.548(802), provides:

> A court, in rendering a judgment in an action brought pursuant to this article, *may award all or a portion of* the costs of litigation, including *reasonable* attorney fees and witness fees, to the complainant in the action if the court determines that the award is appropriate. [Emphasis added.]

It has long been held in Michigan that attorney fees and costs must be "reasonable." There has never been a requirement that a prevailing party must receive the total amount of attorney fees requested or incurred. We find an award of "attorney fees proportionate to plaintiff's success" is not "new law" in Michigan. There is no evidence that this Court, in its prior opinion in this case, intended to overrule longstanding precedent for the award of attorney fees or to prescribe a new method, procedure, or standard for the award of attorney fees. First, had this been the case, we believe that the Court would have provided some guidance and would have published the opinion. Second, there is precedent for awarding a proportionate amount, even though not usually stated in those terms.

In *Wood v DAIIE*, 413 Mich 573, 587-589; 321 NW2d 653 (1982), the Court held:

A determination that a party is entitled to attorney fees . . . does not decide the amount of the award, however. As to this question, we agree with the defendant that the controlling criterion is that the attorney fees be "reasonable." We adopt the guidelines for determining "reasonableness" set forth in *Crawley v Schick*, 48 Mich App 728, 737; 211 NW2d 217 (1973).

The *Crawley* panel noted that there is no precise formula for computing the reasonableness of an attorney's fee, but said that factors to be considered are:

"(1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client. See generally 3 Michigan Law & Practice, Attorneys and Counselors, § 44, p 275, and Disciplinary Rule 2-106(B) of the Code of Professional Responsibility and Ethics. "

See also *Liddell v DAIIE*, 102 Mich App 636, 652; 302 NW2d 260 (1981), which applied the *Crawley* factors to the no-fault insurance scheme. MCL 500.3148(1); MSA 24.13148(1).

While a trial court should consider the guidelines of *Crawley*, it is not limited to those factors in making its determination. Further, the trial court need not detail its findings as to each specific factor considered. The award will be upheld unless it appears upon appellate review that the trial court's finding on the "reasonableness" issue was an abuse of discretion.

As noted earlier, the Court of Appeals has suggested that upon remand the trial court *may choose to adjust the attorney fees in light of the decrease in the total judgment.* [Emphasis added.]

On the basis of *Wood*, it is clear, first, that "results achieved" has been a factor to be considered in determining the "reasonableness" of an attorney fee award since at least 1973, when *Crawley* was released. Second, adopting the suggestions of this Court, the *Wood* Court stated that, upon remand, the trial court may choose to adjust the attorney fees *"in light of the decrease in the total judgment."* (Emphasis added.) Although neither *Crawley* nor *Wood* stated the magic words, "proportionate to success," it is clearly implied in the *Crawley* factors and in *Wood's* adoption of this Court's suggestion to adjust the attorney fees in light of the decrease in the total judgment. Accordingly, in its determination of what is "reasonable," a trial court will consider the results achieved and has the discretion to "adjust" the award in proportion to ["in light of"] the results achieved ["the decrease in the total judgment"].

The Court believes that the words "proportionate to plaintiff's success on appeal" from the prior opinion in this case and "adjust the attorney fees in light of

the decrease in the total judgment" from *Wood* lead to essentially the same result. This Court may have inadvertently misled the trial court by its use of the "proportionate" language, but it did not change any law or attempt to write new law in its instructions to the trial court. The trial court was still required to follow *Wood* and determine a reasonable attorney fee award in light of all the *Crawley* factors, including "success on appeal." Accordingly, we find that the trial court erred in its conclusion that it was required to proportion the award of attorney fees pursuant to a mathematical formula related to the amount of success achieved on appeal. Nevertheless, a remand for recalculation of attorney fees is not required.

In Michigan, the amount of attorney fees awarded is within the discretion of the court. *Howard v Canteen Corp*, 192 Mich App 427, 437; 481 NW2d 718 (1992). We find, that despite the trial court's error, its determination that plaintiff was entitled to ninety percent of requested attorney fees and costs was not an abuse of discretion.

For example, in *Riethmiller v Blue Cross & Blue Shield of Michigan*, 151 Mich App 188, 203; 390 NW2d 227 (1986), a case that arose out of the Civil Rights Act, this Court affirmed the trial court's award of one-half the amount of the plaintiff's attorney fees, after a consideration of the factors set forth in *Wood*.

In *Collister v Sunshine Food Stores, Inc*, 166 Mich App 272, 274-275; 419 NW2d 781 (1988), another Civil Rights Act case, the Court affirmed an award of $2,000 in attorney fees and $750 in costs, where the prevailing attorney had requested $15,456 in attorney fees and $1,156.89 in costs. The Court addressed the factors set forth in *Wood*, which the trial court had

considered. After further analysis of the accomplishments and efforts of the prevailing attorney, the Court held:

In *Hensley v Eckerhart*, 461 US 424; 103 S Ct 1933; 76 L Ed 2d 40 (1983), the Supreme Court held that *the degree of plaintiff's success is a "crucial" factor in determining a proper award of attorney fees* under 42 USC 1988. Although not binding, Michigan courts regard federal precedents in questions analogous to those present under the Michigan civil rights statutes as highly persuasive. *Rogson v General Motors Corp*, 137 Mich App 650, 653; 357 NW2d 919 (1984), rev'd on other grounds 427 Mich 505; 398 NW2d 368 (1986). *In light of the limited success plaintiff achieved, the award was not an abuse of discretion.* [*Callister*, at 275 (emphasis added).]

The fact that the trial court mistakenly concluded there had been a change in the law that required it to "proportion" the attorney fee award instead of addressing the *Wood* factors does not require reversal. This Court will not reverse a trial court's decision if the right result is reached for the wrong reason. *In re Powers*, 208 Mich App 582, 591; 528 NW2d 799 (1995). Daily in the trial courts, attorneys are awarded "proportionate" amounts of their requested attorney fees on the basis of an analysis of the factors set forth in *Wood*. Here, the court determined that plaintiff should be awarded ninety percent of the requested amount because it found that plaintiff was ninety percent successful in her appeal. We conclude that the trial court did not abuse its discretion.

MCL 37.2802; MSA 3.548(802) clearly provides that, in a civil rights case, the costs of litigation may be awarded by the trial court, as well as reasonable attorney fees and witness fees. Thus, there is no merit

to defendant's claim that the court did not have statutory jurisdiction to award costs. Because this Court ordered the matter remanded to award attorney fees and costs, the issue whether plaintiff timely filed her bill of costs is also without merit.

## II. INTEREST ON THE AWARD OF ATTORNEY FEES

In Docket No. 186646, by order entered May 25, 1995, the court awarded statutory interest, pursuant to MCL 600.6013; MSA 27A.6013, from and after March 3, 1993, the date the prior Court of Appeals opinion in this case was issued, on the attorney fees and costs awarded. In Docket No. 191951, by order entered December 22, 1995, the court, finding § 6013, as amended, did not apply, ordered defendant pay plaintiff interest on the entire award of attorney fees and costs, from and after July 25, 1995, at a rate equal to the percentage rise in the consumer price index, all cities average, compounded annually, based upon the April-April indices. Both parties appeal from the court's award of interest.

A

Regarding the order entered on May 25, 1995, plaintiff requested and the trial court ordered that interest on the attorney fees should start to run from and after March 3, 1993, the date this Court awarded plaintiff the reasonable attorney fees. On appeal, defendant argues that the interest on the attorney fees should start to run from May 25, 1995, the date the trial court determined the amount of the appellate attorney fees to be awarded. Defendant contends that because there was no definite amount it could pay before that date, it should not be penalized for the delay.

Defendant did not argue this point before the trial court. As a general rule, issues that are not properly raised before a trial court cannot be raised on appeal absent compelling or extraordinary circumstances. *People v Grant*, 445 Mich 535, 546-547; 520 NW2d 123 (1994). Further, defendant has provided no legal support for its contention. This Court will not search for authority either to sustain or reject a party's position. Where a party fails to cite any supporting legal authority for its position, the issue is effectively abandoned. *Mallard v Hoffinger Industries, Inc*, 210 Mich App 282, 286; 533 NW2d 1 (1995), vacated in part on other grounds, 451 Mich 884 (1996).

We find that the award of interest was reasonable. MCL 600.6013; MSA 27A.6013 provides that interest shall be calculated from the date of filing the complaint. However, considering that the complaint was filed in 1988 and plaintiff did not request that interest start to run from the date of filing the complaint, we find that the trial court did not abuse its discretion. *Howard v Canteen Corp*, 192 Mich App 427, 437; 481 NW2d 718 (1992); MCL 37.2802; MSA 3.548(802).

B

In Docket No. 191951, the trial court held that MCL 600.6013; MSA 27A.6013 did not apply to the award of attorney fees. The trial court held that the judgments in this case ordered declaratory and injunctive relief and were not "money judgments." We find that the trial court erred as a matter of law. We hold that an award of attorney fees and costs in a case that arises under the Civil Rights Act is a "money judgment." Thus, interest on the award of attorney fees should have been computed pursuant to § 6013.

MCL 600.6013(1) and (6); MSA 27A.6013(1) and (6) provide:

> (1) Interest shall be allowed on a *money judgment* recovered in a civil action . . .
>
> (6) . . . for complaints filed on or after January 1, 1987, interest on a *money judgment* recovered in a civil action shall be calculated at 6-month intervals from the date of filing the complaint at a rate of interest *that* is equal to 1% plus the average interest rate paid at auctions of 5-year United States treasury notes during the 6 months immediately preceding July 1 and January 1, as certified by the state treasurer, and compounded annually, pursuant to this section. *Interest under this subsection shall be calculated on the entire amount of the money judgment, including attorney fees and other costs. However, the amount of interest attributable to that part of the money judgment from which attorney fees are paid shall be retained by the plaintiff, and not paid to the plaintiff's attorney.* [Emphasis added.]

The emphasized sections above reflect the 1993 amendments of this statute. 1993 PA 78. The 1993 amendments were effective on April 1, 1994. Section 4 1993 PA 78 provides, in pertinent part, that § 6013, "as amended by this amendatory act, do[es] not apply to cases filed before October 1, 1993." Thus, the amended portion does not apply to this case, which was filed in 1988.

Before the 1993 amendments of § 6013(6), there was no provision that specifically indicated that interest would be calculated on attorney fees and costs. Subsection 1 of the statute merely provided that "interest shall be allowed on a *money judgment* recovered in a civil action." (Emphasis added.)

The trial court relied on *Marina Bay Condos v Schlegel*, 167 Mich App 602, 609; 423 NW2d 284

(1988), a contract action, where the Court held that a "money judgment" is one that adjudges the payment of a sum of money as distinguished from directing an act to be done. In *Marina Bay Condos*, the trial court awarded the plaintiff money that had been paid into escrow and interest on that money, pursuant to § 6013. On appeal, the defendant argued that the plaintiff was not granted a judgment on which statutory interest could be awarded, but had only been permitted to keep the money that had been placed in escrow. This Court found the judgment entered for the plaintiff for the amount in escrow was a "money judgment." *Id.* at 609.

*Marina Bay Condos* addressed an actual award of money to the plaintiff. It did not address an award of attorney fees under the Civil Rights Act. We find that the trial court's reliance on *Marina Bay Condos* was misplaced.

The Civil Rights Act provides a unique treatment of attorney fee awards. Unlike other statutes and court rules that provide for an award of attorney fees as an element of costs, § 801(3) of the Civil Rights Act, MCL 37.2801(3); MSA 3.548(801)(3), specifically defines "damages" to include "reasonable attorney's fees." Under the Civil Rights Act, attorney fees are considered an element of damages and not an element of costs. Thus, an award of attorney fees that arises out of the Civil Rights Act is a "money judgment." The rationale for this provision was provided in *Seals v Henry Ford Hosp*, 123 Mich App 329, 340; 333 NW2d 272 (1983), where the Court held:

> We find that the Legislature could plausibly have believed that allowing plaintiffs in civil rights actions to recover attorney fees would encourage persons deprived of civil

rights to seek legal redress of their grievances. The Legislature was also justified in believing that allowing an award of fees to defendants in similar actions would discourage the bringing of actions under the Elliott-Larsen Act.

A plaintiff who prevailed in a civil rights action before the 1993 amendments of § 6013(6) was entitled to interest on attorney fees under that statute because the Civil Rights Act defines attorney fees as "damages." The 1993 amendments clarify this and further provide that interest will also be applied to costs. The interest calculation in § 6013(6) in effect before the 1993 amendment applies to this judgment. Accordingly, we hold that in its order of December 22, 1995 (Docket No. 191951), interest on the attorney fees should have been awarded under § 6013(6). On remand, the court is to compute interest on the attorney fees awarded in its order of December 22, 1995, pursuant to the formula set forth in § 6013(6).

### III. ENHANCEMENT

Both parties raise issues concerning the twenty-five percent enhancement on the appellate attorney fees incurred from February 5, 1993, through June 13, 1994, as provided in the order of December 22, 1995 (Docket No. 191951). The determination whether an enhancement is appropriate in each case is within the discretion of the trial court. *Mitchell v Cole (After Remand)*, 196 Mich App 675, 680; 493 NW2d 427 (1992).

In the underlying case, the trial court awarded plaintiff a fifty percent fee enhancement. On appeal, this Court, in its prior opinion held in pertinent part:

However, we do find *the court erred in awarding plaintiff a fifty percent fee enhancement.* The trial court

believed the award appropriate because the case was an unusual civil rights case where counsel would not be compensated out of an award of damages and plaintiff's counsel bore the risk of non-recovery. The court's discretion to adjust the lodestar (the reasonable hourly rate times reasonable hours expended) which is presumed to be the reasonable attorney fee, is limited. *Howard* [*v Canteen Corp*, 192 Mich App 427; 481 NW2d 718 (1992)]. In *Wilson* [*v General Motors Corp*, 183 Mich App 21; 454 NW2d 405 (1990)], a panel of this Court, following United States Supreme Court precedent, found that absent extraordinary circumstances, an upper adjustment to the lodestar may not be based upon the risk of loss of nonpayment. Even more recently, the Supreme Court in *City of Burlington v Dague*, 505 US 557; 112 S Ct 2638; 120 L Ed 2d 449 (1992), has clarified its position and held an enhanced award of attorney fees may not be based on the risk of non-recovery. We therefore find *the trial court's reliance on plaintiff's counsel's risk of non-recovery improper.*

We also note that although we are not in agreement with that portion of the *Howard* opinion that permits enhancement in the "rare circumstances when the attorney's work is so superior and outstanding that it far exceeds client expectations and normal levels of competence and in rare cases or extraordinary circumstances when it is necessary for attracting competent counsel", we are bound by administrative order numbers 1990-6 and 1991-11 to follow it. Nonetheless, we find *neither of these situations present in this case.* Although plaintiff claimed the ACLU refused her representation, *she has failed to demonstrate any substantial difficulty in obtaining counsel.* Additionally, although plaintiff's counsel performed a fine job on plaintiff's behalf, *we are unprepared to say that her performance far exceeded client expectations and normal levels of competence.* We therefore vacate that portion of the order awarding plaintiff enhanced fees in the amount of $17,500. [Emphasis added.]

In its opinion of July 25, 1995, the trial court ordered a twenty-five percent enhancement on the appellate attorney fee award. The court held:

> The Court of Appeals found that enhancement was not proper because the plaintiff had failed to demonstrate that she would have faced any difficulty attracting competent counsel. Unpublished per curiam opinion, No.s [*sic*] 123738 and 131716, released March 9, 1993. . . .
>
> In support of her motion plaintiff has now presented the affidavits of several attorneys stating that without the prospect of fee enhancement they would not have agreed to represent the plaintiff in this case. This court finds that the issues before the Court of Appeals were significant matters of first impression under Michigan law. *Plaintiff has now met her burden of demonstrating that she would have faced substantial difficulty in obtaining counsel to represent her on these matters.* This Court remains of the opinion that under the open ended *Wood* test, the need to attract competent counsel to handle significant cases of first impression should be considered in awarding a reasonable attorney fee. However, the issues before the appellate court were identical to the issues before this court and were fully briefed in this court. Since appellate counsel had the benefit of the fine briefs which were prepared for this court, this court concludes that a smaller enhancement on the appellate fees is proper. Accordingly, this Court will award a 25% fee enhancement as to the appellate attorney fees.
>
> This Court further finds that the post-remand phase of these proceedings presented a simple factual determination, whether the decision to exclude the plaintiff was substantially motivated by gender discrimination. Although the post-remand proceedings were lengthy, they did not present significant issues of first impression or other circumstances requiring fee enhancement to attract competent counsel. Attorney fees will not be enhanced for post-remand proceedings. [Emphasis added.]

The court awarded appellate attorney fees and costs for the period from February 5, 1993, until June 13, 1994, during defendant's appeal. The court also awarded attorney fees and costs for the period from June 14, 1994, through June 19, 1995, the postremand period. The court enhanced the appellate attorney fee award by twenty-five percent, but did not enhance the attorney fees for the postremand phase.

In *Mitchell, supra* at 680, the Court addressed the fee enhancement issue. The Court held, in pertinent part:

> Under certain conditions, courts have recognized an upward or downward adjustment of attorney fees. *Howard v Canteen Corp*, 192 Mich App 427, 439; 481 NW2d 718 (1992). The burden of establishing the circumstances under which an enhancement is appropriate is on the fee applicant. Conclusory statements regarding the complexity of the case and significant results are not enough to justify enhancement. The determination whether an enhancement is appropriate in each case is within the discretion of the trial court. *Pennsylvania v Delaware Valley Citizens' Council for Clean Air*, 483 US 711, 728; 107 S Ct 3078; 97 L Ed 2d 585 (1987). We have recently recognized that this discretion is limited and that an enhancement should be saved for those rare circumstances where an attorney's work is so superior and outstanding that it exceeds the client's expectations. *Howard, supra* at 439. In addition, *where the enhancement is necessary to attract competent counsel, the court may apply a multiplier within reason. Id.* at 439-440. [Emphasis added. Some citations omitted.]

The Court reversed the trial court's enhancement. It held:

> [I]t is clear that the trial court focused on the risky nature of this specific case, along with the novelty and complexity of the issues. Because these are inappropriate rea-

sons for enhancing a fee award, we reverse and remand for reconsideration of the issue. On remand, the trial court shall limit its consideration to factors that are permissible under the current state of the law. [*Mitchell*, at 682.]

We find this case presents extraordinary circumstances where enhancement is necessary for attracting competent counsel. On the basis of the affidavits submitted by plaintiff from attorneys whose practices focused on civil rights litigation, plaintiff proved that it would have been extremely difficult to attract competent counsel without the possibility of enhancement of the attorney fee. We conclude that a twenty-five percent enhancement of the appellate attorney fees is reasonable. Accordingly, we find that the trial court did not abuse its limited discretion in its award of a twenty-five percent enhancement of the appellate attorney fees.

#### IV. APPELLATE ATTORNEY FEES AND COSTS

Finally, plaintiff seeks to recover attorney fees incurred in defending this appeal and prosecuting its cross appeal. Such an award is proper under the act. MCL 37.2802; MSA 3.548(802); *McLemore v Detroit Receiving Hosp*, 196 Mich App 391, 402-403; 493 NW2d 441 (1992). On remand, the trial court will determine and award reasonable appellate attorney fees. *Wood, supra.*

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.