Corrigan, C.J.
 

 In this dispute over a pop-up camper, plaintiff, Mary Head, appeals as of right the judgment for her on her claim under the Michigan Consumer Protection Act (mcpa), MCL 445.901
 
 et seq.;
 
 MSA 19.418(1)
 
 et seq.,
 
 and the judgment of no cause of action on her claim for revocation of acceptance. Defendant Phillips Camper Sales & Rental, Inc., cross appeals, challenging the trial court’s award of costs and attorney fees. This case presents an issue of first impression regarding the effect of a seller’s previous attempts to repair defective goods where the buyer revokes acceptance under MCL 440.2608(l)(b); MSA 19.2608(l)(b). We hold that, while a seller has no right to cure after the buyer revokes, the seller’s efforts to repair are relevant to the determinations whether the defect substantially impaired the value of the goods and whether the buyer revoked acceptance within a reasonable time after discovering the defect. In this case, the trial court erroneously instructed the
 
 *98
 
 jury that defendant Phillips’ attempts to repair the camper could support a defense to plaintiff’s claim. We therefore affirm in part, vacate the judgment in part, and remand for further proceedings consistent with this opinion.
 

 I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE
 

 Plaintiff purchased a pop-up camper from defendant Phillips in July 1992. Defendant Phillips arranged for defendant NBD Bank, N.A., to finance plaintiff’s purchase. Plaintiff took delivery of the camper a few days later. Plaintiff soon discovered that the roof “leaned” toward the door and that the door would not lock. She returned the camper to Phillips six days after taking delivery. Phillips replaced the lock and advised plaintiff that the leaning condition was normal for a pop-up camper.
 

 Plaintiff first took the camper on a trip in late July 1992. According to plaintiff, she had difficulty latching the door and assembling the awning. The sides and roof of the camper were unstable and swayed. The refrigerator did not work properly. Plaintiff notified Phillips of these problems on her return home. She experienced the same difficulties during another trip in early August, and cut that trip short when the refrigerator stopped working. Further, in preparing to leave the campsite, plaintiff had considerable difficulty hitching the camper to her van. Plaintiff notified Phillips of these additional problems after she returned home. She then delivered the camper to Phillips on August 31, 1992, for repairs.
 

 Defendant Phillips returned the camper to plaintiff in late September 1992. According to plaintiff, she needed her husband’s assistance to assemble the
 
 *99
 
 camper and the camper continued to “sway.” Moreover, plaintiff could not close the camper. She called Phillips for assistance. A Phillips’ employee then came to her home and successfully closed the camper. Soon thereafter, plaintiff returned the camper to Phillips. Plaintiff initially requested the return of the purchase price, but ultimately agreed to further repairs. Phillips transported the camper to the manufacturer for the repairs.
 

 In late November 1992, defendant Phillips notified plaintiff that the repairs were complete and she could pick up the camper. Plaintiff inspected the camper at Phillips’ place of business and discovered that it continued to lean. She refused to take possession and told Phillips that she no longer wanted the camper. Phillips declined to refund her money and requested another opportunity to repair the camper. Plaintiff agreed. Phillips attempted to repair the camper during December 1992 and January 1993. When plaintiff requested a refund in January, Phillips refused.
 

 In February 1993, defendant Phillips notified plaintiff that she could pick up the camper. Plaintiff’s stepdaughter retrieved the camper from Phillips and transported it to plaintiff’s home. Plaintiff, however, could not open the camper. Further, plaintiff, noting apparent changes in the camper, believed that it was not the one that she had purchased. She compared the vehicle identification number (vin) on the certificate of origin, title, and registration with that on the camper and discovered that they differed by one number.
 
 [1]
 
 Plaintiff demanded a refund in a letter dated
 
 *100
 
 March 19, 1993. Defendant Phillips refused her request.
 

 Plaintiff commenced this action in August 1993, asserting, among other things, claims against defendants for revocation of acceptance, violations of the mcpa, and conversion. Defendant NBD asserted a cross claim against defendant Phillips for breach of the warranty of assignment, seeking damages from Phillips in the event plaintiff was successful on her claims against it. At trial, the trial court granted defendant NBD’s motion for a directed verdict on plaintiff’s claims for conversion and for violation of the mcpa. The court also granted defendant Phillips’ motion for a directed verdict on plaintiff’s claim for conversion. The jury found for defendant Phillips on plaintiff’s claim for revocation, but found for plaintiff on her claim against defendant Phillips for violations of the mcpa. It awarded plaintiff $500 in damages. The jury found for Phillips on the cross claim.
 

 Plaintiff subsequently moved for judgment notwithstanding the verdict (JNOV) on her claim for revocation on the ground that defendant Phillips’ failure to convey marketable title to her substantially impaired the value of the camper. Plaintiff also moved for enhanced interest under MCL 600.6013(11); MSA 27A.6013(11), and costs and attorney fees under the MCPA, MCL 445.911(2); MSA 19.418(H)(2). Plaintiff further requested a permanent injunction, enjoining defendant Phillips from either offering to sell or selling vehicles without possessing documents enabling it to convey marketable title. Defendant Phillips, in turn, moved for offer of judgment sanctions against plaintiff under MCR 2.405. The trial court denied plaintiff’s motions for JNOV, a permanent injunction,
 
 *101
 
 and enhanced interest. The court granted plaintiffs motion for costs and attorney fees, awarding her $1,953.75 in costs and $2,500 in fees. The court denied defendant Phillips’ motion for offer of judgment sanctions.
 

 n. revocation of acceptance
 

 Plaintiff first contends that the trial court erroneously instructed the jury that defendant Phillips’ efforts to repair the camper could support a defense to her claim for revocation of acceptance. We agree. This Court reviews jury instructions in their entirety to determine whether they accurately and fairly present the applicable law and the parties’ theories.
 
 Joerger v Gordon Food Service, Inc,
 
 224 Mich App 167, 173; 568 NW2d 365 (1997). We wifi not reverse on the basis of instructional error unless the failure to do so would be inconsistent with substantial justice. MCR 2.613(A);
 
 Johnson v Corbet,
 
 423 Mich 304, 326; 377 NW2d 713 (1985).
 

 A UCC § 2-608(l)(b)
 

 This case presents a question of first impression regarding the effect of a seller’s attempts to repair where the buyer revokes acceptance under § 2-608 of the Uniform Commercial Code (ucc), adopted by the Michigan Legislature and codified at MCL 440.2608; MSA 19.2608. The statute provides:
 

 (1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it
 

 (a) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or
 

 (b) without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty
 
 *102
 
 of discovery before acceptance or by the seller’s assurances.
 

 (2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.
 

 (3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.
 

 This case does not fall within subsection 1(a) because the record does not reflect that plaintiff knew of the defect when she accepted the camper. Further, although the parties to a sales agreement may limit remedies and damages for a breach, MCL 440.2719; MSA 19.2719, the parties’ agreement in this case contained no such limitation.
 
 [2]
 
 Therefore, plaintiff did not have to prove that a limited remedy failed in its purpose or operated to deprive her of the value of the bargain to pursue other UCC remedies, including revocation. See
 
 Kelynack v Yamaha Motor Corp,
 
 152 Mich App 105, 110-113; 394 NW2d 17 (1986). Consequently, we must determine whether a seller has a right to cure when a buyer revokes his acceptance on the basis of a defect that was not known at the time
 
 *103
 
 of acceptance, MCL 440.2608(l)(b); MSA 19.2608(l)(b), and, if not, the effect of a seller’s previous attempts to repair on the buyer’s right to revoke.
 

 This issue involves a question of statutory inteipretation, which we review de novo.
 
 Watson v Bureau of State Lottery,
 
 224 Mich App 639, 644; 569 NW2d 878 (1997). In construing a statute, our purpose is to ascertain the reasonable meaning of the specific language employed by the Legislature.
 
 Faircloth v Family Independence Agency,
 
 232 Mich App 391, 406; 591 NW2d 314 (1998). Judicial construction is not permitted where the plain and ordinary meaning of the statutory language is clear.
 
 Id.
 

 A
 
 majority of courts considering this question have concluded that a seller has no right to cure after a buyer revokes his acceptance under § 2-608(l)(b) of the UCC. E.g.
 
 American Honda Motor Co v Boyd,
 
 475 So 2d 835, 840 (Ala, 1985);
 
 US Roofing, Inc v Credit Alliance Corp,
 
 228 Cal App 3d 1431, 1443-1444; 279 Cal Rptr 533 (1991);
 
 Jensen v Seigel Mobil Homes Group,
 
 105 Idaho 189, 193-194; 668 P2d 65 (1983);
 
 Fleet Maintenance, Inc v Burke Energy Midwest Corp,
 
 11 Kan App 2d 523, 524-525; 728 P2d 408 (1986);
 
 Linscott v Smith,
 
 3 Kan App 2d 1, 3-4; 587 P2d 1271 (1978);
 
 Gappelberg v Landrum,
 
 666 SW2d 88, 89-91 (Tex, 1984);
 
 City Nat’l Bank of Charleston v Wells,
 
 181 W Va 763, 769-770; 384 SE2d 374 (1989); see also
 
 Bonebrake v Cox,
 
 499 F2d 951, 957 (CA 8, 1974);
 
 Johannsen v Minnesota Valley Ford Tractor Co, Inc,
 
 304 NW2d 654, 657 (Minn, 1981). A minority of courts have reached the opposite result on the basis of either policy considerations,
 
 Fitzner Pontiac-Buick-Cadillac, Inc v Smith,
 
 523 So 2d 324, 327-328 (Miss, 1988), or the determination that § 2-608(3) incoipo
 
 *104
 
 rates a seller’s right to cure under § 2-508.
 
 Ayanru v General Motors Acceptance Corp,
 
 130 Misc 2d 440, 445; 495 NYS2d 1018 (1985);
 
 Oberg v Phillips,
 
 615 P2d 1022, 1026 (Okla App, 1980).
 

 We adopt the majority approach to the construction of § 2-608(1) (b). Under the plain language of MCL 440.2608(1)(b); MSA 19.2608(1)(b), a seller has no right to cure a defect that was not discoverable when the buyer accepted the goods. The Legislature explicitly granted the seller a right to cure in MCL 440.2508; MSA 19.2508, and implicitly granted a similar right in MCL 440.2608(1)(a); MSA 19.2608(1)(a) (acceptance with knowledge of a nonconformity that the seller will seasonably cure). The Legislature granted no such right in MCL 440.2608(1)(b); MSA 19.2608(1)(b). We will not read a right to cure into § 2-608(1)(b) where the Legislature granted that very right in other sections, but did not do so here. See
 
 Farrington v Total Petroleum, Inc,
 
 442 Mich 201, 210; 501 NW2d 76 (1993).
 

 We further conclude that MCL 440.2608(3); MSA 19.2608(3) does not incorporate the seller’s right to cure under MCL 440.2508; MSA 19.2508. Section 2-608(3) grants a buyer who revokes his acceptance “the same rights and duties with regard to the goods involved as if he had rejected them.” Those rights and duties are set forth in provisions such as § 2-602(2)(b) & (c), § 2-603, and § 2-604. MCL 440.2602(2)(b) & (c); MSA 19.2602(2)(b) & (c), MCL 440.2603; MSA 19.2603, MCL 440.2604; MSA 19.2604; see
 
 Colonial Dodge, Inc v Miller,
 
 420 Mich 452, 460; 362 NW2d 704 (1984). Section 2-608(3) does not similarly extend the seller’s rights and duties. Further, to incorporate a right to cure into § 2-608 would ignore the policies
 
 *105
 
 that underlie the distinction between rejection and acceptance within the UCC. Under MCL 440.2601; MSA 19.2601, the buyer may reject a tender if the goods “fail in any respect to conform to the contract.” If a buyer rejects a nonconforming tender, the seller may have a right to cure the defect. MCL 440.2508; MSA 19.2508. The seller can also recover damages if the buyer wrongfully rejects. MCL 440.2703; MSA 19.2703. Once the buyer accepts the tender, however, he loses the ability to reject the goods. The buyer must pay for the goods at the contract rate, MCL 440.2607(1); MSA 19.2607(1), and may only revoke his acceptance if the defect substantially impairs its value to him. MCL 440.2608(1); MSA 19.2608(1). If the defect does not rise to this level of severity, the buyer is limited to those remedies available for a breach of contract. The seller, in turn, loses the right to cure, but gains the benefit of the higher substantial impairment standard for revocation. Further, if the buyer wrongfully revokes, the seller may recover damages. MCL 440.2703; MSA 19.2703.
 

 We certainly recognize that policy reasons do exist for extending a seller’s right to cure to the revocation context. These reasons include the minimization of economic waste, the improvement of uniformity, and the reduction in the costs of bargaining over the existence and scope of the right to cure. See generally Foss,
 
 The seller’s right to cure when the buyer revokes acceptance: Erase the line in the sand,
 
 16 S HI U L J 1 (1991), pp 1-17; Sebert,
 
 Rejection, revocation, and cure under article 2 of the uniform commercial code: Some modest proposals,
 
 84 Northwestern U L R 375 (1990), pp 392-398, 425-428. We wiH not, however, debate the public policy interests at
 
 *106
 
 stake in § 2-608(1) (b).
 
 Ready-Power Co v Dearborn,
 
 336 Mich 519, 525; 58 NW2d 904 (1953). In our view, that debate is for the Legislature, not this Court. See
 
 Empire Iron Mining Partnership v Orhanen,
 
 455 Mich 410, 421; 565 NW2d 844 (1997);
 
 Morgan v Taylor,
 
 434 Mich 180, 192; 451 NW2d 852 (1990). Accordingly, under the plain language of the statute, a seller has no right to cure when a buyer revokes acceptance under MCL 440.2608(l)(b); MSA 19.2608(l)(b).
 

 A seller’s attempts to repair are not, however, irrelevant to a determination whether a buyer rightfully revoked acceptance under § 2-608(1) (b). The uncertainty inherent in the substantial impairment standard encourages the buyer to allow the seller to repair rather than risk paying damages for wrongful revocation. See MCL 440.2608; MSA 19.2608, Official Comment 4. The seller’s attempts to repair are likewise a factor in determining whether the buyer notified the seller of revocation within a “reasonable time” after discovering the defect.
 
 Id.;
 
 see
 
 Kelynack, supra
 
 at 114;
 
 City Nat’l Bank, supra
 
 at 381. Moreover, the ease of repair may be relevant to the question whether the defect substantially impairs the value of the goods to the buyer. See
 
 Haverlah v Memphis Aviation, Inc,
 
 674 SW2d 297 (Tenn App, 1984). We next consider whether the trial court adequately instructed the jury regarding these principles.
 

 B. JURY INSTRUCTIONS
 

 In this case, the trial court instructed the jury that defendant Phillips’ efforts to repair the camper could provide it with a defense to plaintiff’s claim for revocation:
 

 
 *107
 
 [T]his case involves a claim by the buyer for breach of a contract for the sale of goods. A contract for the sale [of] goods is an agreement between a buyer and a seller who, by their words and conduct, show that they intended to make a contract. The buyer has the burden of proving that a contract exists at the time of the purchase, that the seller breached the contract, and that the buyer was damaged by the breach of contract.
 
 Now, the seller has the burden of proving the defense of the buyer failed to revoke the contract within a reasonable period if
 
 [sic]
 
 time; and two, that the seller has made all reasonable and necessary efforts to repair any alleged defects.
 

 Now, also keep in mind that the seller’s good faith efforts do not excuse its failure to have the item repaired and returned to the Plaintiff within a reasonable period of time. So where a
 
 —
 
 a dealer has limited its obligation under the agreement to repair a particular item, they do not have an unlimited time to make the repairs, but rather must repair within a reasonable time.
 

 All right, now that had to do with revocation. Let me go over it again. The buyer has the burden of proving that the contract exists at the time of purchase, the seller breached the contract, the buyer was damaged by the breach of contract.
 
 The seller has the burden of proving the defense that the buyer failed to revoke the contract within a reasonable period of time, and that the seller has made all reasonable and necessary efforts to repair any alleged defects. But again that has to be done within a reasonable period of time.
 

 All right, now the buyer’s revocation of acceptance. A buyer must accept goods from the seller if the goods and the manner, time, and place of their delivery conform to the contract. In this case, the buyer accepted the goods and then revoked the acceptance. The buyer is entitled to revoke acceptance of the goods only if those goods do not conform to the contract and the nonconformity substantially impairs the value of those goods to the buyer and if the buyer notified the seller of the revocation within a reasonable time after the buyer discovered, or should have discovered, the nonconformity and the buyer accepted the
 
 *108
 
 goods on the reasonable assumption that the nonconformity would be cured and it was not cured within the time agreed, or the buyer did not discover the nonconformity and the buyer’s acceptance was reasonably induced, either by difficulty of discovery before acceptance or by the seller’s assurances.
 

 Now, the buyer has the burden of proving that he or she gave the seller the required notification. In this case the Defendants admit that they received the required notification. If you determine that the buyer rightfully revoked the acceptance, then the seller has breached the contract. If you determine that the buyer has wrongfully revoked the contract—or excuse me, the acceptance, then the buyer has breached the contract. [Emphasis added.]
 

 We conclude that the trial court erroneously instructed the jury on the applicable law and theories of the parties. Because defendant Phillips conceded that plaintiffs acceptance of the camper was induced by the difficulty of discovery of the nonconformity and that plaintiff gave the required notification, two issues remained for determination by the jury: (1) whether plaintiff revoked her acceptance within a reasonable time, and (2) whether the nonconformity substantially impaired the value of the camper to plaintiff. Plaintiff bore the burden of proof regarding both these issues. MCL 440.2607(4); MSA 19.2607(4), MCL 440.1201(8); MSA 19.1201(8); see
 
 Colonial Dodge, supra
 
 at 458;
 
 Birkner v Purdon,
 
 27 Mich App 476, 481-482; 183 NW2d 598 (1970). The trial court, however, erroneously instructed the jury that defendant Phillips’ “reasonable and necessary efforts to repair” could provide a defense to plaintiff’s claim for revocation. The trial court also improperly instructed regarding a seller’s limitation of remedies to repair when the sales agreement contained no such limitation. These errors were not harmless because the trial
 
 *109
 
 court’s confusing instructions pertained to the critical issues at trial. We vacate the judgment for defendant Phillips on plaintiff’s claim for revocation of acceptance and remand for a new trial.
 

 m. mcpa
 

 We reject plaintiff’s contention that the trial court erred in granting defendant NBD’s motion for a directed verdict on plaintiff’s claim against it under the mcpa. In reviewing the trial court’s decision on a motion for a directed verdict, we view the evidence in a light most favorable to the nonmoving party to determine whether a factual question exists.
 
 Oakland Hills Development Corp v Lenders Drainage Dist,
 
 212 Mich App 284, 289; 537 NW2d 258 (1995). A directed verdict is appropriate only if reasonable minds could not differ regarding whether the plaintiff has met the burden of proof.
 
 Id.
 

 In this case, the uncontroverted evidence established that plaintiff, without prompting from defendant NBD, continued to make scheduled payments after she revoked her acceptance. In count X of her complaint, plaintiff alleged that defendant NBD violated the mcpa by (1) failing to reveal to her that she did not have to continue making payments under the financing agreement after revoking her acceptance, (2) not informing her that it would expect payment even if she initiated an action against defendant Phillips, and (3) failing to reveal that it would not honor the contractual provision that subjected it to all claims and defenses that she could raise against defendant Phillips. In a similar vein, plaintiff argued in opposition to defendant NBD’s motion that NBD’s
 
 *110
 
 failure to return payments she made violated the MCPA.
 

 Plaintiff now argues that defendant NBD is liable for defendant Phillips’ violation of the MCPA because, as the holder of the retail installment contract, it was subject to
 
 all
 
 plaintiff’s claims and defenses arising out of the underlying transaction. See
 
 Jerry v Second Nat’l Bank of Saginaw,
 
 208 Mich App 87; 527 NW2d 788 (1994). We decline to consider this argument because plaintiff did not raise it below. See
 
 Phinney v Perlmutter,
 
 222 Mich App 513, 544; 564 NW2d 532 (1997). This Court will not review a case on a theory different from that on which it was tried.
 
 Ford v Howard,
 
 59 Mich App 548, 551; 229 NW2d 841 (1975).
 

 Plaintiff next claims that the trial court abused its discretion in declining her request for injunctive relief against defendant Phillips under the MCPA because she failed to demonstrate irreparable harm. Again, we disagree. This Court reviews a trial court’s decision whether to grant injunctive relief for an abuse of discretion.
 
 Schadewald v Brule,
 
 225 Mich App 26, 39; 570 NW2d 788 (1997).
 

 The trial court did not abuse its discretion in declining to grant injunctive relief. The MCPA authorizes an action to “[ejnjoin in accordance with the principles of equity a person who is engaging in or is about to engage in a method, act, or practice which is unlawful under [the MCPA].” MCL 445.911(l)(b); MSA 19.418(H)(1)(b). Injunctive relief, however, is an extraordinary remedy that courts normally grant only when “(1) justice requires it, (2) there is no adequate remedy at law, and (3) there exists a real and imminent danger of irreparable injury.”
 
 ETT Ambulance Service Corp v Rockford Ambulance, Inc,
 
 204 Mich
 
 *111
 
 App 392, 400; 516 NW2d 498 (1994). Although the plaintiff need not demonstrate the absence of an adequate remedy at law to obtain injunctive relief under the MCPA, other “principles of equity” still apply. MCL 445.911(l)(b); MSA 19.418(H)(1)(b). Thus, a real and imminent danger of irreparable injury must exist to support a grant of injunctive relief.
 
 ETT Ambulance Service, supra
 
 at 400. In this case, the trial court correctly observed that plaintiff failed to demonstrate either a pattern of violating the MCPA or any likelihood that defendant Phillips will engage in unlawful conduct in the future. Accordingly, the trial court properly declined to issue an injunction because no danger of irreparable injury existed.
 

 IV. CONVERSION
 

 We reject plaintiffs argument that the trial court erred in granting defendants’ motions for directed verdicts on her claims for conversion. Contrary to plaintiff’s assertion, defendants’ refusal to grant plaintiff a refund after she revoked her acceptance does not support claims for conversion. The tort of conversion is “any distinct act of domain wrongfully exerted over another’s personal property in denial of or inconsistent with the rights therein.”
 
 Foremost Ins Co v Allstate Ins Co,
 
 439 Mich 378, 391; 486 NW2d 600 (1992). Statutory conversion, by contrast, consists of knowingly “buying, receiving, or aiding in the concealment of any stolen, embezzled, or converted property.” MCL 600.2919a; MSA 27A.2919(1). To support an action for conversion of money, the defendant must have an obligation to return the specific money entrusted to his care.
 
 Check Reporting Services, Inc v Michigan Nat'l Bank-Lansing,
 
 191 Mich App 614,
 
 *112
 
 626; 478 NW2d 893 (1991).
 
 [3]
 
 “The defendant must have obtained the money without the owner’s consent to the creation of a debtor and creditor relationship.”
 
 Citizens Ins Co v Delcamp Truck Center, Inc,
 
 178 Mich App 570, 575; 444 NW2d 210 (1989). Under MCL 440.2711(1); MSA 19.2711(1), a buyer who justifiably revokes his acceptance may recover the portion of the purchase price paid. That right is enforceable by action. MCL 440.1106(2); MSA 19.1106(2). The UCC does not impose on the seller an affirmative obligation to return the purchase price after the buyer revokes acceptance. Accordingly, the trial court properly granted directed verdicts for defendants on plaintiff’s claims for conversion because they were under no obligation to return the specific money entrusted to them.
 

 V. ATTORNEY FEES
 

 We reject defendant Phillips’ contention in its cross appeal that the trial court abused its discretion in awarding plaintiff attorney fees under the mcpa because its violation of the act resulted from bona fide error. A person who suffers a loss as a result of a violation of the MCPA may generally recover the greater of actual damages or $250, along with a reasonable attorney fee. MCL 445.911(2); MSA 19.418(H)(2). The plaintiff’s recovery, however, is limited to actual damages if “the defendant shows by a preponderance of the evidence that a violation of
 
 *113
 
 th[e] act resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid the error.” MCL 445.911(6); MSA 19.418(H)(6). In this case, the uncontroverted evidence established that defendant Phillips sold the camper to plaintiff before correcting a known vin discrepancy. Further, Phillips had previously experienced similar problems with other campers. The record does not reflect that Phillips maintained a procedure to avoid the sale of campers with unresolved vin discrepancies. Accordingly, the trial court properly awarded plaintiff an attorney fee in this case. See
 
 Temborious v Slatkin,
 
 157 Mich App 587, 603; 403 NW2d 821 (1986).
 

 We likewise reject plaintiffs initial contention that the trial court erred in failing to hold an evidentiary hearing regarding the reasonableness of her fee request. The trial court should normally hold an evidentiary hearing when the opposing party challenges the reasonableness of a fee request.
 
 B & B Investment Group v Gitler,
 
 229 Mich App 1, 15-17; 581 NW2d 17 (1998);
 
 Petterman v Haverhill Farms, Inc,
 
 125 Mich App 30, 33; 335 NW2d 710 (1983). Here, however, the trial court did not err in awarding fees without having held an evidentiary hearing because the parties created a sufficient record to review the issue, and the court fully explained the reasons for its decision. See
 
 Giannetti Bros Constr Co v Pontiac,
 
 175 Mich App 442, 450; 438 NW2d 313 (1989).
 

 Plaintiff next claims that the trial court abused its discretion in awarding her only $2,500 of her requested $23,987 attorney fee. We review a trial court’s finding regarding a reasonable fee for an abuse of discretion.
 
 Jordan v Transnational Motors,
 
 
 *114
 

 Inc,
 
 212 Mich App 94, 97; 537 NW2d 471 (1995). The trial court retains the authority to award a reasonable fee, regardless of the actual attorney fee incurred by the plaintiff.
 
 Smolen v Dahlmann Apartments, Ltd,
 
 186 Mich App 292, 295; 463 NW2d 261 (1990). In determining a reasonable fee, the court must consider the special circumstances presented in an mcpa case.
 
 Jordan, supra
 
 at 99. The trial court should also consider the factors set forth in
 
 Crawley v Schick,
 
 48 Mich App 728, 737; 211 NW2d 217 (1973):
 

 (1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expense incurred; and (6) the nature and length of the professional relationship with the client.
 

 The court, however, is not limited to considering the
 
 Crawley
 
 factors and may adjust an attorney’s fee in light of the results of the proceedings.
 
 Smolen, supra
 
 at 296;
 
 Schellenberg v Rochester Michigan Lodge No 2225,
 
 228 Mich App 20, 45; 577 NW2d 163 (1998).
 

 The trial court determined that, although plaintiff’s attorney’s requested hourly rate for services rendered was reasonable, it would not grant plaintiff’s request in its entirety because she prevailed on only one of twelve counts asserted in her complaint. The trial court explained:
 

 In good conscience, it would be difficult for this Court, that if it felt the attorney fees were in the ballpark of twenty-three to twenty-four thousand dollars, to award that entire amount. The revocation claim simply was not prevailed upon. There were other counts that were either dismissed ahead of time by the Court or the jury didn’t find were applicable, so when all is said and done, it could be argued that there was a very limited return by this jury,
 
 *115
 
 although they did find it to be a violation of the Consumer Protection Act.
 

 In light of our decision to grant a new trial on plaintiff’s claim for revocation, we remand for reconsideration of the award of attorney fees under the mcpa on disposition of plaintiff’s remaining claim. On remand, the trial court shall also consider plaintiff’s request for attorney fees incurred on appeal. See
 
 Smolen, supra
 
 at 298; cf.
 
 Bloemsma v Auto Club Ins Ass’n (After Remand),
 
 190 Mich App 686, 690-691; 476 NW2d 487 (1991). We express no opinion regarding the reasonableness of the trial court’s original award.
 

 VI. REMAINING issues
 

 Plaintiff asserts that the trial court erred in denying her motion for judgment notwithstanding the verdict on the ground that the defects in the camper and the discrepancy in vin substantially impaired its value to her. We disagree. In reviewing the trial court’s decision on a motion for JNOV, we view the evidence in a light most favorable to the nonmoving party to determine whether reasonable jurors could reach different conclusions.
 
 Zander v Ogihara Corp,
 
 213 Mich App 438, 441; 540 NW2d 702 (1995). “If reasonable jurors could honestly have reached different conclusions, neither the trial court nor this Court may substitute its judgment for that of the jury.”
 
 Id.
 

 We conclude that the trial court properly denied plaintiff’s motion. Because plaintiff premised her motion below solely on the vin issue, we will not consider her additional grounds for jnov first raised on appeal.
 
 Schellenberg, supra
 
 at 49;
 
 Phinney, supra
 
 at 544. Regarding her vin argument, plaintiff has provided no legal support for her contention that the dis
 
 *116
 
 crepancy in the vin either rendered the conveyance void or substantially impaired the value of the camper to her as a matter of law. This Court will not search for authority to sustain or reject a party’s position.
 
 Schellenberg, supra
 
 at 49. Plaintiff has effectively abandoned this issue by failing to cite any supporting legal authority.
 
 Id.
 

 Finally, in light of our decision to grant a new trial on plaintiff’s claim for revocation, plaintiff’s argument that the trial court improperly questioned one of her witnesses is rendered moot. Further, we decline to consider both plaintiff’s claim that the trial court erred in declining to award her enhanced interest under MCL 600.6013(11); MSA 27A.6013(11), and defendant Phillips’ contention in its cross appeal that the trial court erred in denying its motion for sanctions against plaintiff under MCR 2.405. The trial court shall reconsider those questions on disposition of plaintiff’s remaining claim. We express no opinion regarding the merit of the requests.
 

 Affirmed in part, vacated in part, and remanded. We do not retain jurisdiction. Plaintiff, as the prevailing party on appeal, may tax costs pursuant to MCR 7.219.
 

 [1]
 

 The sticker attached to the camper states that the vin is 1RKTC2600M1000135, whereas the certificate of origin, title, and temporary registration list the vin as 1RKTC3600M1000135.
 

 [2]
 

 The contract provided:
 

 It is expressly agreed that there are no warranties, express or implied, made by the selling dealer or the manufacturer on the motor vehicle, chassis or parts furnished hereunder except, in the case of a new motor vehicle the warranty expressly given to the purchaser upon the delivery of such motor vehicle or chassis.
 

 The manufacturer’s warranty limited the remedy to repair and replacement. The sales agreement did not similarly limit plaintiff’s remedies against defendant Phillips.
 

 [3]
 

 Michigan courts have held that a plaintiff may maintain an action for conversion where the defendant cashes a check as the plaintiff’s agent or bailor and retains an amount to which he was not entitled.
 
 Hogue v Wells,
 
 180 Mich 19, 24; 146 NW 369 (1914) (promissory note);
 
 Citizens Ins Co v Delcamp Truck Center, Inc,
 
 178 Mich App 570, 575-576; 444 NW2d 210 (1989) (account overpayment). Plaintiff makes no such claim in this case.