# STATE OF MICHIGAN

# COURT OF APPEALS

CHESTER RUDNICKI and SOPHIE RUDNICKI,

Plaintiffs-Appellants,

v

ISSAM ATEEK, SUHA ATEEK, VIRGINIA
SURLETTA, and CITY OF STERLING
HEIGHTS,

Defendants,

and

RONALD E. REYNOLDS and VERCRUYSSE
MURRAY, PC,

Intervenors-Appellees.

UNPUBLISHED
October 11, 2016

No. 328130
Macomb Circuit Court
LC No. 2013-002760-CH

Before: SAAD, P.J., and JANSEN and M. J. KELLY, JJ.

PER CURIAM.

Plaintiffs, Chester and Sophie Rudnicki (collectively, the Rudnickis), appeal by right the trial court's order granting the motion by intervenor, Vercruysse Murray, PC, to enforce its attorney's charging lien in the amount of $9,000 against proceeds received from a settlement reached between the Rudnickis and defendants, Issam Ateek, Suha Ateek, Virginia Surletta, and the City of Sterling Heights. Because we conclude that the trial court did not err when it granted Vercruysse Murray's motion, we affirm.

-1-

# I. BASIC FACTS

This case originated from incidents of flooding on the Rudnickis property, which the Rudnickis alleged were caused by their neighbors and the City. In September 2012, the Rudnickis retained a lawyer, Ronald E. Reynolds, to represent them.[1] After Reynolds was unable to resolve the issue with the City, the Rudnickis insisted that Reynolds file suit; Reynolds did so in July 2013.

The lawsuit proceeded and, in February 2014, with the assistance of a facilitator and the cooperation of the City and the insurers of the neighboring property owners, the parties and their engineers worked toward a resolution of the Rudnickis' drainage issue and reached an "outline for a resolution which required future engineering work and obtaining construction estimates." In April 2014, the court adjourned a status conference until May 2014, because the Rudnickis' "engineer was completing plans on a proposed settlement to be circulated between the parties for final review and approval." Reynolds related that, in May 2014, the Rudnickis asked him to withdraw as their lawyer so they could proceed on their own behalf; they did this even though "a final resolution was close to being completed." Later that same month, before the court granted his motion to withdraw, Reynolds attended a conference and the parties allegedly agreed to a final resolution of the drainage issue. Reynolds stated that the agreement was based on the outline for resolution established in February 2014.

At a June 2014 status conference, the trial court granted Reynolds' motion to withdraw. At the same conference, the parties—with the Rudnickis appearing on their own behalf—approved the final resolution of the drainage issue with the costs to be covered by the insurers of the neighbors' properties and the City. The court then entered an order dismissing the case with prejudice as stipulated by the parties.

During Reynolds's representation, Vercruysse Murray provided detailed monthly billing statements to the Rudnickis, which listed fees totaling $28,804.37 from March 2013 through July 2014; the fees included 116.7 hours of legal services by Reynolds at an hourly rate of $225 ($26,257.50), 11.1 hours of paralegal services at an hourly rate of $140 ($1,554), and costs and fees of $992.87. Vercruysse Murray's statements also included over 30 hours of work—referred to as "no charge" fees—that Reynolds performed but for which he did not charge. The Rudnickis paid $16,728.71 of the $28,804.37 during the course of the litigation, which left a balance of $12,075.66. After his withdrawal, Reynolds notified the parties that Vercruysse Murray would assert a charging lien for its services against any settlement proceeds.

After the Rudnickis purportedly refused to endorse the joint checks from the settlement proceeds, Vercruysse Murray moved to enforce its charging lien. It supported its motion with the parties' fee agreement, the monthly billing statements detailing the charges, and Reynolds'

---

[1] In a fee agreement with the Rudnickis, Reynolds agreed to charge a reduced rate of $225 per hour for his services and $100 per hour for the services of a paralegal. In addition, Reynolds agreed to provide the first 10 hours of legal services for free.

affidavit explaining the work he performed and the circumstances of the case. In response, the Rudnickis asserted that Reynolds was negligent in his representation and his fees were vague, excessive, and questionable. They also set forth specific objections to Reynolds's fees, including that he charged excessive and fraudulent fees and breached the fee agreement by charging $140 per hour for paralegal services, instead of the agreed upon $100 hourly rate, failed to provide the first 10 hours of legal services free of charge, failed to itemize or detail the charges on the billing statements, charged excessive "no-charge" fees, and spent a disproportionate amount of time dealing with the City as opposed to the other defendants. The Rudnickis asked the court to conduct an evidentiary hearing on the reasonableness of the fees.

The trial court held a hearing on Vercruysse Murray's motion. After the hearing, the trial court concluded that Vercruysse Murray was entitled to $9,000 on its lien, which amounted to a reduction of more than $3,000 in the requested fees. The trial court specifically determined that it did not need to conduct an evidentiary hearing because it had sufficient information to rule on the issue.

The Rudnickis now appeal in this Court.

## II. EVIDENTIARY HEARING

### A. STANDARD OF REVIEW

The Rudnickis' sole argument on appeal is that the court abused its discretion when it refused to conduct an evidentiary hearing on Vercruysse Murray's motion to enforce its charging lien. Specifically, they maintain that the trial court needed to conduct a hearing to resolve the dispute over the reasonableness of the fees. We review a trial court's decision whether to conduct an evidentiary hearing to determine the reasonableness of attorney fees for an abuse of discretion. *John J Fannon Co v Fannon Products, LLC*, 269 Mich App 162, 171; 712 NW2d 731 (2005). A trial court abuses its discretion when its decision is outside the range of reasonable and principled outcomes. *Souden v Souden*, 303 Mich App 406, 414; 844 NW2d 151 (2013).

### B. ANALYSIS

A charging lien is " 'an equitable right to have the fees and costs due for services secured out of the judgment or recovery in a particular suit.' " *Souden*, 303 Mich App at 411, quoting *George v Sandor M Gelman, PC*, 201 Mich App 474, 476; 506 NW2 583 (1993). "The charging lien creates a lien on a judgment, settlement, or other money recovered as a result of the attorney's services." *Souden*, 303 Mich App at 411 (quotation marks and citation omitted). " 'An attorney-client relationship must be established by contract before an attorney is entitled to payment for services rendered.' " *Id.* at 414-415, quoting *Plunkett & Cooney, PC v Capitol Bancorp*, 212 Mich App 325, 329; 536 NW2d 886 (1995). A lawyer is generally entitled to recover his or her reasonable fees even if his or her client terminates the relationship. *Souden*, 303 Mich App at 415. The part requesting a fee must, however, show both that the attorney fees were incurred and that they were reasonable. *Souden*, 303 Mich App at 415.

The Rudnickis claim that they were entitled to an evidentiary hearing. Generally, " '[w]hen requested attorney fees are contested, it is incumbent on the trial court to conduct a hearing to determine what services were actually rendered, and the reasonableness of those services.' " *Souden*, 303 Mich App 415, quoting *Reed v Reed*, 265 Mich App 131, 166; 693 NW2d 825 (2005). However, "[i]f the trial court has sufficient evidence to determine the amount of attorney fees and costs, an evidentiary hearing is not required." *John J Fannon Co*, 269 Mich App at 171. A trial court does not err in awarding fees without first conducting an evidentiary hearing where "the parties created a sufficient record to review the issue, and the court fully explained the reasons for its decision." *Head Philips Camper Sales & Rental, Inc*, 234 Mich App 94, 113; 593 NW2d 595 (1999).

In this case, Vercruysse Murray submitted, along with its brief explaining the claimed fees, detailed monthly billing statements, which the court indicated it reviewed and found to accurately reflect the charges incurred. Contrary to the Rudnickis' argument, the billing statements are sufficiently detailed to apprise the court of the nature of the services rendered and the fees for the services. We do not believe that the statements were impermissibly vague as a result of "block billing."[2] Instead, the statements describe the services provided in detail (each time entry corresponded to a day's tasks and the individual tasks were specifically identified) and, in numerous instances, after the Rudnickis requested further information, the daily entry was further detailed by providing a bracketed time entry next to the task to further specify the amount of time spent on each task. Additionally, the no-charge entries were broken out separately and specifically identified.

Vercruysse Murray also submitted Reynolds' affidavit explaining the circumstances of the case and detailing the work he performed on the case before his withdrawal. Notably, Reynolds averred that he attempted to work with the City's attorney to resolve the Rudnickis' drainage issue before filing suit, only filed suit after the Rudnickis insisted, and worked to reach a settlement in the case along with a facilitator, the parties, the City, the parties' engineers, and their insurers. Reynolds attested that he was able to reach a settlement outline for resolution of the drainage issue, which formed the basis for the final settlement ultimately approved by the Rudnickis. Reynolds' affidavit, thus, fully informed the court about his efforts and the challenges presented by the litigation.

Vercruysse Murray also submitted the fee agreement between Reynolds and the Rudnickis, which the court properly considered, noting that the Rudnickis did not dispute the reasonableness of the contractually negotiated fee of $225 per hour for Reynolds' legal services and that Vercruysse Murray improperly charged the Rudnickis $140 per hour for paralegal services when they agreed to an hourly rate of $100. Furthermore, the court was aware of the Rudnickis' specific objections to the fees and the documentary evidence was sufficient for the

---

[2] "The term 'block billing' refers to the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Robinson v City of Edmond*, 160 F3d 1275, 1284 n 9 (CA 10, 1998) (quotation marks and citation omitted).

trial court to resolve those objections. The parties' briefs also clearly reveal the contentious nature of the relationship between Reynolds and the Rudnickis regarding the services and the fees charged. Significantly, the trial court allowed the Rudnickis to present their objections to the fees before at the hearing on the motion to enforce the charging lien.

Because there was a sufficient evidentiary record for the court to ascertain what services were actually rendered and the reasonableness of the fees charged in light of the Rudnickis' objections, we cannot conclude that the trial court abused its discretion when it elected to forgo an evidentiary hearing. *Head*, 234 Mich App at 113. In addition to the evidentiary record, we note, although the Rudnickis assert otherwise, that the record reveals that the judge who decided the fee dispute in this case, having presided over the case and specifically the hearing during which the terms of the settlement were placed on the record, was familiar with the nature and complexity of the case and was aware of the parties' efforts during the proceedings to work toward a settlement. The court's familiarity with the case is a relevant consideration. *John J Fannon Co*, 269 Mich App at 171; *Giannetti Bros Constr Co v Pontiac*, 175 Mich App 442, 450; 438 NW2d 313 (1989). It is also evident from the decision that the court considered the reasonableness of the fees in light of the specific objections and applied the pertinent factors identified in *Wood v Detroit Auto Inter-Insurance Exchange*, 413 Mich 573, 588; 321 NW2d 653 (1982), and fully explained the reasons for its decision to enforce the charging lien.[3]

The Rudnickis cite several decisions where this Court remanded for an evidentiary hearing; however, they are each inapposite because evidence regarding the reasonableness of the fees was clearly lacking or the trial court did not address the reasonableness issue. See, e.g., *Souden*, 303 Mich App at 416-417; *Reed*, 265 Mich App at 165-166; *Miller v Meijer, Inc*, 219 Mich App 476, 478-479; 556 NW2d 890 (1996); *Petterman v Haverhill Farms, Inc*, 125 Mich App 30, 33; 335 NW2d 710 (1983). By contrast, in this case, there was sufficient evidence presented to support the claimed fees, the court was sufficiently appraised of the Rudnickis' objections to the fees, and the court adequately addressed the reasonableness issue in light of the pertinent factors.

Although we are mindful that an evidentiary hearing is generally appropriate where, as here, the reasonableness of the fees are disputed, we conclude that the trial court's decision to forego a hearing under these circumstances did not fall outside the range of reasonable and principled outcomes. *Souden*, 303 Mich App at 414.

---

[3] With respect to these factors, the court found there was no long-term professional relationship between the Rudnickis and Reynolds, Reynolds was a lawyer in good standing with the experience to handle the matter and the settlement agreement was reached largely through his efforts, the matter was not particularly complex, the Rudnickis agreed to the $225 hourly rate in and did not argue that it was unreasonable, Reynolds did not bill for numerous services, Reynolds billed an excessive amount for review and preparation, and Reynolds improperly charged a higher rate than agreed upon for paralegal services.

Affirmed.

/s/ Henry William Saad
/s/ Michael J. Kelly