# STATE OF MICHIGAN

# COURT OF APPEALS

MEIR HAR-TZION,

      Plaintiff-Appellee/Cross-Appellant,

v

ZEEV SAGI,

      Defendant-Appellant/Cross-
      Appellee,

and

ASAF, LLC,

      Defendant.

UNPUBLISHED
July 24, 2018

No. 336711
Genesee Circuit Court
LC No. 13-100561-CZ

Before: BORRELLO, P.J., and M. J. KELLY and BOONSTRA, JJ.

PER CURIAM.

Defendant-appellant/cross-appellee, Zeev Sagi, appeals as of right the trial court's decision to enter a default judgment against him in favor of plaintiff-appellee/cross-appellant, Meir Har-Tzion. Because there are no errors warranting reversal, we affirm.

## I. BASIC FACTS

Har-Tzion filed a complaint against Sagi and defendant, ASAF, LLC, alleging that he had provided them with approximately $50,000 to purchase real property in Fenton, Michigan in exchange for a 50% interest in ASAF. He contended that, despite remitting the money to Sagi, he never received the ownership interest in ASAF, nor did he receive a promised refund of the money he remitted.

The procedural history of this case is pertinent. ASAF was defaulted on July 8, 2013 after Sagi improperly filed an answer on its behalf. The trial court set aside this default and the ensuing default judgment, thereby permitting ASAF to file an answer to the complaint. The initial notice of hearing for a non-jury trial in this matter was issued on August 8, 2014, for a trial date of December 16, 2014. However, on November 13, 2014, Sagi and ASAF's lawyer sought and obtained permission to withdraw. The December 2014 trial date was adjourned, presumably to permit Sagi sufficient time to retain a new lawyer. A new proof of service and notice to appear for a non-jury trial was sent on January 22, 2015, for a trial date of April 7, 2015. A

-1-

separate notice to appear was also issued on January 22, 2015, indicating at the bottom of the page: "FAILURE OF THE PLAINTIFF/DEFENDANT TO APPEAR may result in a dismissal of the case or cause a default judgment to be entered." Sagi submitted a physician's recommendation suggesting his health would not permit his appearance on the scheduled date. A third non-jury trial notice to appear was issued on April 27, 2015, identifying a trial date of September 9, 2015, and indicating to the parties: "YOU ARE DIRECTED TO APPEAR" at the identified courthouse and courtroom for the initiation of a non-jury trial. Sagi did not assert that he had failed to receive any of these mailings from the trial court. Yet, on the date set for trial, Sagi did not appear, he did not have a lawyer present on his behalf, and there was no one present to represent ASAF.

When Sagi failed to appear for trial, Har-Tzion sought a default, which the court granted. The trial court held a hearing on damages before concluding that Har-Tzion was entitled to treble damages under MCL 600.2919a(1) (authorizing treble damages for statutory conversion), and a default judgment was entered against Sagi. Har-Tzion voluntarily dismissed the claims against ASAF, and no judgment was entered against it.

In January 2016, Sagi moved to set aside the default judgment for a variety of reasons, including that he had not been ordered to appear for trial so a default could not be entered, he did not have appropriate notice of the entry of the default judgment, the trial court failed to properly articulate the basis for its findings, the trial court improperly pierced the corporate veil by ordering Sagi to personally pay claims against ASAF, and that the claim for statutory conversion and treble damages was improper. In March 2016, the court entered an order granting relief from judgment as to the issue of statutory conversion and treble damages. And, eventually, the court entered a default judgment against Sagi, ordering him to pay Har-Tzion $49,750 in damages, $1,254.18 in taxable costs, and $16,583.33 in attorney fees under MCR 2.403(O).

## II. DEFAULT

### A. STANDARD OF REVIEW

On appeal, Sagi challenges the trial court's entry of a default against him for his failure to appear for trial. Sagi also challenges the trial court's decision to hold a hearing on damages immediately after entering the default, and he contends that the trial court failed to sufficiently articulate the basis for its ruling premised on statutory conversion. "A trial court's decision regarding a motion to set aside a default judgment is reviewed for an abuse of discretion. An abuse of discretion occurs when the court's decision results in an outcome that falls outside the range of principled outcomes." *Epps v 4 Quarters Restoration LLC*, 498 Mich 518, 528; 872 NW2d 412 (2015) (citations omitted).

### B. ANALYSIS

Sagi argues that the default was not proper because there was no court order or subpoena compelling his appearance. However, as explained by our Supreme Court in *Maldonado v Ford Motor Co*, 476 Mich 372, 376; 719 NW2d 809 (2006):

trial courts possess the inherent authority to sanction litigants and their counsel, including the power to dismiss an action. This power is not governed so much by

rule or statute, but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.

> We further acknowledge that our trial courts also have express authority to direct and control the proceedings before them. MCL 600.611 provides that "[c]ircuit courts have jurisdiction and power to make any order proper to fully effectuate the circuit courts' jurisdiction and judgments." Additionally, MCR 2.504(B)(1) provides that "[i]f the plaintiff fails to comply with these rules or a court order, a defendant may move for dismissal of an action or a claim against that defendant." [Citations omitted.]

Further, this Court has held that under MCR 2.603, "a party is subject to a default judgment if the party fails to appear at trial[.]" *Marshall Lasser, PC v George*, 252 Mich App 104, 108; 651 NW2d 158 (2002). Similarly, in *Vincencio v Ramirez*, 211 Mich App 501, 506; 536 NW2d 280 (1995), this Court has recognized that "[a] court, in its discretion, may dismiss a case with prejudice or enter a default judgment when a party or counsel fails to appear at a duly scheduled trial." Thus, although "[d]ismissal is a drastic step that should be taken cautiously," *id.*, it is a permissible sanction that may be entered for a party's failure to appear at a duly scheduled trial. Accordingly, because Sagi failed to appear for a duly schedule trial, the court had discretion to enter a default judgment against him. *Maldonado*, 476 Mich at 376; *Marshall Lasser, PC*, 252 Mich App at 108; *Vincencio*, 211 Mich App at 506.

Next, Sagi contends that the trial court erred by immediately addressing the issue of damages after entering the default. Sagi asserts that notice had to be provided to him before the trial court could determine damages. We disagree.

MCR 2.603(B) addresses what notice must be provided to a defaulted party when a default judgment is sought. Relevant to this appeal, MCR 2.603(B)(1)(d) provides that "[i]f the default is entered for failure to appear for a scheduled trial, notice under this subrule is not required." Here, as the default was entered following Sagi's failure to appear for trial, no notice was required under the court rules.

Sagi next argues that the trial court violated MCR 2.517 by failing to properly articulate the basis for its findings related to statutory conversion. MCR 2.517(A) provides in part:

> (1) In actions tried on the facts without a jury or with an advisory jury, the court shall find the facts specially, state separately its conclusions of law, and direct entry of the appropriate judgment.

> (2) Brief, definite, and pertinent findings and conclusions on the contested matters are sufficient, without overelaboration of detail or particularization of facts.

> (3) The court may state the findings and conclusions on the record or include them in a written opinion.

(4) Findings of fact and conclusions of law are unnecessary in decisions on motions unless findings are required by a particular rule. See, e.g., MCR 2.504(B).

Assuming *arguendo* that the trial court did not comply with this court rule when it decided to award treble damages on the basis of statutory conversion, we could not grant relief on this basis because the issue has been rendered moot by the trial court's order setting aside the award of treble damages for statutory conversion. "As a general rule, an appellate court will not decide moot issues. A case is moot when it presents only abstract questions of law that do not rest upon existing facts or rights. An issue is deemed moot when an event occurs that renders it impossible for a reviewing court to grant relief." *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998).

Sagi also argues that any award for damages should have been entered against ASAF, not Sagi, because the trial testimony reflected that ASAF was the entity that received the money from Har-Tzion. Sagi contends that the facts show that if there was a breach of contract, it was ASAF, not Sagi, who breached the contract. He argues that, as a result, the trial court judgment against him improperly pierced the corporate veil of ASAF in order to make him personally liable for the LLC's debts.

However, "it is an established principle that 'a default settles the question of liability as to well-pleaded allegations and precludes the defaulting party from litigating that issue.' " *Kalamazoo Oil Co v Boerman*, 242 Mich App 75, 79; 618 NW2d 66 (2000) (citation omitted). "In other words, where a trial court has entered a default judgment against a defendant, the defendant's liability is admitted and the defendant is estopped from litigating issues of liability." *Id*. In this instance, liability was established only with regard to Sagi and not ASAF. As a result, the imposition of damages to Sagi and not ASAF was in accordance with the legal principles governing the default. Stated differently, although Sagi argues that the facts show that he did not breach the contract, the allegations in the complaint contended that Sagi breached his contract with Har-Tzion, and, because a default was properly entered against Sagi, he is precluded from arguing that he has no liability for breach of contract.

In addition, Sagi's argument that the trial court improperly pierced ASAF's corporate veil is without merit. "The traditional basis for piercing the corporate veil has been to protect a corporation's creditors where there is a unity of interest of the stockholders and the corporation and where the stockholders have used the corporate structure in an attempt to avoid legal obligations . . . ." *RDM Holdings, LTD v Continental Plastics Co*, 281 Mich App 678, 715; 762 NW2d 529 (2008) (quotation marks and citations omitted). Here, because there is no judgment against ASAF, there is no need for Har-Tzion to pierce its corporate veil in order to reach Sagi's assets.

## III. CROSS-APPEAL

### A. STANDARD OF REVIEW

On cross-appeal, Har-Tzion asserts the trial court should not have set aside its holding finding statutory conversion and the award of treble damages under MCL 600.2919a. This Court

reviews a trial court's determination of damages and its factual findings for clear error. *Alan Custom Homes, Inc v Krol*, 256 Mich App 505, 513; 667 NW2d 379 (2003).

## B. ANALYSIS

The trial court initially awarded treble damages for statutory conversion, but Sagi challenged that decision. "If the amount of damages is in dispute, a defaulting defendant is nonetheless entitled to a hearing, at which it may challenge the plaintiff's alleged damages amount, if the trial court determines that a hearing is necessary." *Epps*, 498 Mich at 555. The trial court permitted the parties to submit proposed orders on this issue, ultimately accepting the version proffered by Sagi and setting aside its ruling on treble damages. In doing so, the court indicated that it believed damages were available under a breach of contract, not a conversion theory, thereby signifying that it was setting aside the default as it related to *statutory conversion*.

In accordance with MCL 600.2919a:

(1) A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees:

(a) Another person's stealing or embezzling property or converting property to the other person's own use.

(b) Another person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted.

(2) The remedy provided by this section is in addition to any other right or remedy the person may have at law or otherwise.

As explained by this Court in *Head v Phillips Camper Sales & Rental, Inc*, 234 Mich App 94, 111-112; 593 NW2d 595 (1999) (citations and quotation marks omitted):

To support an action for conversion of money, the defendant must have an obligation to return the specific money entrusted to his care. The defendant must have obtained the money without the owner's consent to the creation of a debtor and creditor relationship.

Based on Har-Tzion's own statements, his voluntary remittance of monies to Sagi and the title company to provide the down payment for the purchase of the property in Fenton did not comprise the statutory conversion of these payments. In exchange for the monies, Har-Tzion asserted he was to be afforded an ownership interest in ASAF, which Sagi disputes. Regardless, the monies were voluntarily remitted and the designated property was purchased. Sagi, however, failed to subsequently provide Har-Tzion with the promised interest in ASAF. Simply because Har-Tzion allegedly failed to receive the benefit or promised result of his bargain with Sagi does

not establish a conversion. As a result, the trial court's determination that the damages were limited to the amount of monies invested or remitted by Har-Tzion does not constitute reversible error.

Affirmed.

/s/ Stephen L. Borrello
/s/ Michael J. Kelly
/s/ Mark T. Boonstra