# STATE OF MICHIGAN

# COURT OF APPEALS

FRANCIS A. MILLER,

        Petitioner-Appellee,

v

BLUE CROSS BLUE SHIELD OF MICHIGAN,

        Respondent-Appellant,

and

OFFICE OF FINANCIAL AND INSURANCE
REGULATION,

        Respondent.

UNPUBLISHED
September 6, 2016

No. 326300
Washtenaw Circuit Court
LC No. 11-001099-AA

Before: BOONSTRA, P.J., and METER and BECKERING, JJ.

PER CURIAM.

Respondent Blue Cross Blue Shield of Michigan[1] appeals as of right a trial court order awarding petitioner $44,760.30 in attorney fees and costs, plus statutory interest from the date she petitioned the trial court. We affirm.

## I. FACTS

Petitioner was a patient at Heartland's Skilled Nursing Facility (SNF) in Ann Arbor from January 12, 2010, through April 6, 2010. Respondent was petitioner's health insurance provider under an insurance policy that provided coverage for "skilled care" received at a "skilled nursing facility" if "medically necessary." The policy defined skilled care as a "level of care that can be given only by a licensed nurse to ensure the medical safety of the patient and the desired medical result [that] must be": "[o]rdered by the attending physician," "[p]rovided by a registered nurse or a licensed practical nurse supervised by a registered nurse or physician," and "[m]edically

---

[1] The Office of Financial and Insurance Regulation is not a party to this appeal and, therefore, Blue Cross Blue Shield of Michigan will be referred to as respondent throughout this opinion.

-1-

necessary according to generally accepted standards of medical practice." In contrast to skilled care, the policy did not cover custodial care, which was denied as "[c]are primarily used in helping the patient with activities of daily living or meeting personal needs[, including] help in walking, getting in and out of bed, . . . bathing, dressing, and taking medicine." Such care "can be provided safely and reasonably by people without professional skills or training." The services petitioner received at the SNF are described in 31 pages of notes from SNF doctors, nurses, and employees. The notes indicate that petitioner had a home evaluation on March 15, 2010, but that, when assessing the visit the following day, petitioner's occupational therapist concluded that petitioner is "not recommended to return home yet" and checked a box on a form in front of a directive to "[c]ont[inue] the established plan of care as outlined." The SNF notes indicate that petitioner received occupational and physical therapy until March 22, 2010. Also, the notes contain a March 22, 2010, physician order from a Dr. Reddy for "Diathermy," a type of occupational therapy, five days a week for a period of 30 days. The SNF notes also make several references to a "G-tube" or a "PEG tube" between March 19, 2010, and April 2, 2010, with removal of the tube taking place on March 30 but pain at the site persisting until April 2. Petitioner explained that a "G-tube" is a "stomach feeding tube."

Respondent denied coverage for petitioner's care at the SNF from March 20, 2010, through April 6, 2010, on the ground that petitioner needed custodial care, rather than skilled care, during this period. Petitioner first appealed the denial of coverage through respondent's internal appeals process. During the internal appeal, petitioner requested a copy of documents used by respondent in reaching its decision and received documents entitled "appeal notes." These appeal notes appear to be internal documents created by respondent that described petitioner's care and recovery. Some of the appeal notes appear to summarize the 31-page SNF file, but others do not. The notes do not reference any treatment after March 25, 2010.

On October 22, 2010, respondent issued its final determination denying coverage for any care at the SNF after March 19. The written determination noted that the SNF had only submitted medical records up to March 25, 2010, and that respondent was unable to review the period of March 26 to April 6, 2010, because the SNF had not complied with respondent's request for medical records for that period. Respondent explained that it based its determination on recommendations from its medical consultants and independent physicians' peer review organization (PROM) who reviewed the records through March 25, 2010, and concluded that petitioner could have been treated in a lesser setting after March 19 because she was at a high functional level during the period of March 20 through March 25 and no longer met the criteria for an inpatient setting.

Petitioner then submitted a request for external review before the Office of Financial and Insurance Regulation (OFIR). The OFIR assigned the case to an independent review organization (IRO), known as Maximus, and directed respondent to provide Maximus with documents, petitioner's insurance contract, and "any other information considered in making the adverse determination . . . in this case." According to the OFIR, respondent faxed it a 42-page document on January 12, 2011, that contained a letter to Maximus detailing respondent's rationale, excerpts from petitioner's insurance contract, and the 31 pages of SNF notes described above.

The OFIR notified petitioner that it would consider all the information she provided to the OFIR and advised her that she could submit additional information and supporting documentation to the OFIR and that the OFIR would forward the information to Maximus for review. According to the OFIR, petitioner sent it several documents on January 12, 2011.

The report prepared by Maximus and provided to the OFIR indicated that it received additional documents and information from respondent, and additional information on petitioner's behalf, on January 12, 2011. The report specifically noted that "[m]edical records from 2/16/10 to 4/6/10 were included in the case file." The report indicated that the review was conducted by a "practicing physician who is board certified in physical medicine and rehabilitation" and a Maximus staff "licensed attorney."

Maximus found that "[i]t was not medically necessary for [petitioner] to have been treated at a skilled nursing facility level of care from 3/19/10 to 4/6/10" because petitioner "had plateaued in her mobility and activities of daily living for 2 weeks prior to 3/19/10" and, specifically, petitioner "was modified independent ambulating 75 feet times 2 with a rolling walker, independent with bed mobility, and independent to modified independent with transfers, and . . . she required minimum assistance with bathing and lower extremity dressing." Maximus concluded that petitioner was medically stable as of 3/19/10 and did not have skilled nursing needs, and that the physician orders and nursing notes provided in the case file demonstrated that petitioner received custodial level monitoring and care.

On August 1, 2011, the OFIR entered an order affirming respondent's denial of coverage. In doing so, it outlined the facts of the case, including petitioner's care at the SNF, respondent's denial of coverage, and the internal review process. Significantly, it summarized respondent's October 22, 2010, denial of coverage, writing that respondent's "medical consultants" and PROM "reviewed the records through March 25, 2010, [and determined] that [petitioner] could have been treated in a lesser setting after March 19 [because from] March 20 through March 25, [petitioner] was at a high functional level [and, t]herefore, she no longer met [the] criteria for an inpatient setting." The OFIR relied on Maximus's findings, explaining that it afforded Maximus's recommendation "deference" and could "discern no reason why [its] recommendation should be rejected . . . ." Therefore, the OFIR found respondent's denial of coverage to be "consistent with the terms of" petitioner's policy and upheld respondent's denial of coverage.

On September 30, 2011, petitioner filed a petition for review with the trial court, asking the court to reverse the OFIR's order, require respondent to pay for petitioner's treatment through April 6, 2010, and award petitioner reasonable costs and attorney fees incurred in having to seek review. Petitioner argued, in part, that Maximus and the OFIR clearly failed to consider some of the pertinent medical records and thus violated Michigan law. Respondent replied that all pertinent records and documents had been reviewed.

The trial court framed the issue as whether "there was substantial competent and material evidence to support [the OFIR's] findings" and focused on whether Maximus and the OFIR examined, considered, and commented on records showing that petitioner was still using a feeding tube after respondent cut off petitioner's coverage at SNF on March 20, 2010. At the

motion hearing, respondent could identify no specific Maximus or OFIR reference to a feeding tube or a feeding tube's effect on whether petitioner required skilled nursing care.

The trial court found that "the pertinent medical records were not considered" and "the finding that services were not medically necessary under the [insurance] contract on March 20th and thereafter is not supported by competent material or substantial evidence in the record." Thus, the trial court reversed the OFIR's order in its entirety. The court also stated that it would "entertain a petition for attorneys' fees."[2]

The trial court granted petitioner's motion for attorney fees and costs. The court rejected respondent's argument that its defense had legal merit "given the level of expertise by the reviewing physicians [and] independent reviewers." The court found that it was frivolous for respondent to assert that petitioner did not need a nurse to administer a feeding tube and that "under [MCL] 600.2591 [respondent] had no reasonable basis to believe that the facts underlying their legal position were true and . . . their position was devoid of any arguable legal merit."

The trial court thereafter conducted an evidentiary hearing to assess the amount of fees and costs to award. The trial court awarded petitioner $44,760.30, "together with statutory interest from and after the date of filing the Petition with the Circuit Court."

## II. ANALYSIS

Respondent advances three alternative arguments to dispute the attorney fee award: (a) no sum can be awarded under MCL 600.2591 because this was not a "civil action," (b) no sum should be awarded because respondent's defense was not frivolous pursuant to MCL 600.2591, and (c) the amount awarded was not reasonable and should be reduced. Although we agree that respondent did not defend a "civil action" under MCL 600.2591, we nonetheless uphold the sanction because the definition of a frivolous defense under MCL 600.2591 is comparable to the definition of a vexatious appeal under MCR 7.216(C)(1)(b), and the trial court did not clearly err in concluding that respondent's defense was frivolous. Further, we find that the trial court did not abuse its discretion in calculating the amount of attorney fees and costs to be awarded.

### A. MCL 600.2591

Respondent failed to preserve the issue of whether it was defending a "civil action" under MCL 600.2591. However, because this is a question of law and all the facts necessary to resolve the issue have been presented, *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 387; 803 NW2d 698 (2010), we consider the issue. We review unpreserved issues for "plain error . . . ." *Rivette v Rose-Molina*, 278 Mich App 327, 328; 750 NW2d 603 (2008). " 'To avoid

---

[2] Respondent filed an application for leave to appeal with this Court. *Miller v Blue Cross Blue Shield of Mich*, unpublished order of the Court of Appeals, entered September 24, 2013 (Docket No. 310578). This Court denied the application "for lack of merit in the grounds presented." *Id.*

forfeiture under the plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights.' " *Kern v Blethen-Coluni*, 240 Mich App 333, 336; 612 NW2d 838 (2000), quoting *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

MCL 600.2591(1) states that "if a court finds that a . . . *defense to a civil action* was frivolous, the court that conducts the *civil action* shall award to the prevailing party the costs and fees incurred by that party in connection with the *civil action . . . .*" (Emphasis added). The statute does not define "civil action," but the statute allowing sanctions in such an action is "incorporated into the court rules by MCR 2.114(F) and MCR 2.625(A)(2) . . . ." *People v Herrera*, 204 Mich App 333, 338; 514 NW2d 543 (1994) (considering whether the statute applies to a criminal action). MCR 2.114(F) and MCR 2.625(A)(2) are part of the civil procedure chapter of the court rules, which states, in MCR 2.101, that a "civil action" "is commenced by filing a complaint with a court." The chapter further explains that a complaint is a type of pleading, stating that "[t]he term "pleading" includes only: (1) a complaint, (2) a cross-claim, (3) a counterclaim, (4) a third-party complaint, (5) an answer to a complaint, cross-claim, counterclaim, or third-party complaint, and (6) a reply to an answer." MCR 2.110.

MCR 2.114(F) states that "a party pleading a frivolous claim or defense is subject to costs as provided in MCR 2.625(A)(2)." MCR 2.625(A)(2) clarifies that "if the court finds on motion of a party that an action or defense was frivolous, costs shall be awarded as provided by MCL 600.2591." Therefore, for sanctions to be awarded because of a frivolous defense under MCL 600.2591, the defense must be in response to a complaint filed with a court and must be asserted in a pleading, such as an answer.

In this case, petitioner filed no complaint with a circuit court, and respondent did not assert its defense in a pleading. Therefore, the trial court plainly erred, *Rivette*, 278 Mich App at 328; *Kern*, 240 Mich App at 336, in awarding attorneys' fees and costs under MCL 600.2591.

Instead, this case is governed by the appellate court rules, because petitioner filed a petition for review of the OFIR's final order in the trial court pursuant to MCL 550.1915 and MCR 7.103(A)(4), and respondent asserted its defense in a response. Under the appellate rules, the trial court may award sanctions for vexatious proceedings. MCR 7.216(C); see also MCR 7.112 (explaining that "the circuit court may grant relief as provided in MCR 7.216"). A defense can be vexatious if an "argument, brief, document, or record filed . . . was grossly lacking in the requirements of propriety, violated court rules, or grossly disregarded the requirements of a fair presentation of the issues to the court." MCR 7.216(C)(1)(b).

Courts have considered "frivolous" and "vexatious" appeals in tandem. See, e.g., *BJ's & Sons Constr Co, Inc v Van Sickle*, 266 Mich App 400, 413; 700 NW2d 432 (2005) (describing an appeal as both "frivolous" and "vexatious"), and *State Farm Fire & Cas Co v Johnson*, 187 Mich App 264, 268-269; 466 NW2d 287 (1990) (upholding a trial court's finding that a claim or defense was not frivolous under MCR 2.114(F) and MCL 600.2591, and reasoning that the related appeal was, similarly, not vexatious under MCR 7.216(C)). The court in *Fisher v Detroit Free Press, Inc*, 158 Mich App 409, 418; 404 NW2d 765 (1987), found that sanctions for a "vexatious appeal [were] appropriate" pursuant to MCR 7.216(C)(1)(a) when the trial court found a lawsuit to be frivolous pursuant to MCR 2.114. Specifically, the court found that "the

-5-

'reasonable basis for belief that there was a meritorious issue to be determined on appeal' language of MCR 7.216(C)(1)(a) was similar to "the language of MCR 2.114 . . . ." *Id.*

Parallels exist between whether respondent "had [a] reasonable basis to believe that the facts underlying [its defense] were in fact true," or whether respondent's "legal position was devoid of arguable legal merit," see MCL 600.2591(3)(a), and whether respondent's "argument [or] brief . . . was grossly lacking in the requirements of propriety . . . or grossly disregarded the requirements of a fair presentation of the issues to the court," MCR 7.216(C)(1)(b). Because we uphold the trial court's finding that respondent asserted a frivolous defense, as described below, and because it is clear from the record that the trial court would have similarly sanctioned respondent for a vexatious defense under MCR 7.216(C)(1)(b), we conclude that the trial court reached the right result—sanctioning respondent—for the wrong reason. *Schellenberg v Rochester, Mich Lodge No 2225*, 228 Mich App 20, 47; 577 NW2d 163 (1998) ("[t]his Court will not reverse a trial court's decision if the right result is reached for the wrong reason").[3]

## B. FRIVOLOUS DEFENSE AND VEXATIOUS APPEAL

Respondent argues that the trial court clearly erred in finding its defense frivolous or vexatious. We disagree.

We review a "trial court's finding that an action is frivolous . . . for clear error." *Kitchen v Kitchen*, 465 Mich 654, 661; 641 NW2d 245 (2002). "A decision is clearly erroneous where . . . [we are] left with a definite and firm conviction that a mistake has been made." *Id*. at 661-662.

"Under the American rule, attorney fees generally are not recoverable from the losing party as costs" unless an exception is "set forth in a statute or court rule . . . ." *Haliw v City of Sterling Hts*, 471 Mich 700, 707; 691 NW2d 753 (2005). MCL 600.2591 allows a "prevailing party" in a "civil action" to move for "the costs and fees incurred by [the prevailing] party" to be "assess[ed] . . . against the nonprevailing party" if the losing party's "defense to a civil action was frivolous . . . ." Such an award is a "sanction[]." *1300 LaFayette East Coop, Inc v Savoy*, 284 Mich App 522, 535; 773 NW2d 57 (2009). MCR 7.216(C)(1)(b) allows the court to sanction a party advancing a vexatious "argument, brief, document, or record filed . . . [that] was grossly lacking in the requirements of propriety, violated court rules, or grossly disregarded the requirements of a fair presentation of the issues to the court." "The purpose of imposing sanctions for asserting frivolous claims 'is to deter parties and attorneys from filing documents or asserting claims and defenses that have not been sufficiently investigated and researched or that are intended to serve an improper purpose.' " *BJ's & Sons Constr Co, Inc*, 266 Mich App at 405, quoting *FMB-First Mich Bank v Bailey,* 232 Mich App 711, 723; 591 NW2d 676 (1998).

---

[3] Given the unusual posture of this case, in which the trial court invited petitioner to file a motion for attorney fees but did not specify the basis for such a motion and in fact awarded fees under an inapplicable statute, we decline to reverse the award of fees merely because of petitioner's failure to strictly adhere to MCR 7.211(C)(8).

Under MCL 600.2591, a frivolous defense can occur in one of the following three situations: (i) [t]he party's primary purpose in . . . asserting the defense was to harass, embarrass, or injure the prevailing party," (ii) "[t]he party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true," or (iii) "[t]he party's legal position was devoid of arguable legal merit." MCL 600.2591(3)(a). Whether a defense was frivolous depends on the facts of the case at the time the defense was asserted. *Kitchen*, 465 Mich at 662; *Robert A Hansen Family Trust v FGH Indus LLC*, 279 Mich App 468, 486; 760 NW2d 526 (2008).

In this case, the trial court found that respondent's defense to petitioner's action challenging the OFIR's external review of her claim under MCL 550.1911, a provision of the Patient's Right to Independent Review Act (PRIRA), MCL 550.1901 *et seq*., was frivolous under both MCL 600.2591(3)(a)(ii) and (3)(a)(iii).[4] "PRIRA is . . . part of the Legislature's across-the-board attempt to regulate . . . insurance providers consistently, . . . to standardize the external review process designed to resolve disputes over covered benefits, establish IRO qualifications, and provide for penalties in cases of wrongful denial of benefits." *Ross v Blue Care Network of Mich*, 480 Mich 153, 164-165; 747 NW2d 828 (2008). A party "aggrieved by" the decision reached through the external review process "may seek judicial review . . . ." *Id*. at 170.

Under PRIRA, once the OFIR accepts a petitioner's request for external review, the covered person is permitted to submit additional information and supporting documentation for the OFIR's review, and the health carrier is required to submit the documents and any information considered in making the adverse determination during the health carrier's review process. *Id*. at 169; MCL 550.1911(4)(a) and (9). Because this case "involve[d] issues of medical necessity," the OFIR "assign[ed] an [IRO]," here Maximus, "to conduct external reviews and . . . provide a written recommendation to the [OFIR] commissioner on whether to uphold or reverse [respondent's] . . . final adverse determination." MCL 550.1911(6). In making its recommendation, Maximus was not bound by any prior decision of respondent. *Id*. at 169-170, citing MCL 550.1911(8). Maximus was required to "[r]eference . . . the evidence or documentation . . . considered in reaching its recommendation." MCL 550.1911(14)(g).

The reviewing entity had to consider the documentation submitted by respondent, see MCL 550.1911(9), and the following information, if "available" and deemed "appropriate":

    (a) [Petitioner's] pertinent medical records.

    (b) The attending health care professional's recommendation.

---

[4] Petitioner also argued that respondent's defense was frivolous because respondent's "primary purpose . . . was to harass, embarrass, or injure" petitioner. MCL 600.2591(3)(a)(i). Because this was not the basis for the trial court's finding of a frivolous defense, we do not consider the argument.

(c) Consulting reports from appropriate health care professionals and other documents submitted by [respondent], [petitioner], [petitioner]'s authorized representative, or [petitioner]'s treating provider.

(d) The terms of coverage under the [petitioner]'s health benefit plan with [respondent].

(e) The most appropriate practice guidelines, which may include generally accepted practice guidelines, evidence-based practice guidelines, or any other practice guidelines developed by the federal government or national or professional medical societies, boards, and associations.

(f) Any applicable clinical review criteria developed and used by [respondent] or its designee utilization review organization. [MCL 550.1911(13).]

Finally, the OFIR was required to review Maximus's recommendation "to ensure that it is not contrary to the terms of coverage under [petitioner]'s health benefit plan with" respondent. MCL 550.1911(15). In issuing its decision, the OFIR was required to provide "[t]he principal reason or reasons for [its] decision, including . . . the information provided as determined by" Maximus. MCL 550.1911(16)(a). Courts review "[d]ecisions of an administrative agency or officer," here the OFIR's decision, "to determine whether the decision[ was] authorized by law." *Id*. at 164, citing Const 1963, art 6, § 28.

Petitioner alleged violations of MCL 550.1911(13) and (15). Respondent defended the OFIR's decision by arguing that it was "authorized by law," specifically arguing that the OFIR complied with MCL 550.1911(13) because both Maximus and the OFIR considered all required documents in issuing their decisions, including the 31-page SNF file. Respondent argued that the OFIR complied with MCL 550.1911(15) because it referenced petitioner's insurance plan and properly considered Maximus's report, which concluded that petitioner received custodial care not covered under the policy.

Petitioner submitted additional documentation for the OFIR's review, and respondent submitted documentation considered in denying petitioner's claim. MCL 550.1911(4)(a) and (9). The documentation that petitioner argues that the OFIR neglected to consider—the 31 pages of SNF notes—was included in respondent's materials. The OFIR assigned the case to Maximus for review, MCL 550.1911(6), and Maximus issued a written recommendation to the OFIR to uphold respondent's decision to deny coverage. Maximus stated that "[m]edical records from 2/16/10 to 4/6/10 were included in the case file."

In issuing its decision, the OFIR indicated that it reviewed Maximus's recommendation and cited petitioner's insurance policy. MCL 550.1911(15). Also, the OFIR provided "[t]he principal reason . . . for [its] decision," stating that it afforded Maximus's report "deference" and could "discern no reason why [its] recommendation should be rejected." See MCL 550.1911(16)(a).

-8-

Despite Maximus's statement that the pertinent records were included in the case file and the OFIR's reliance on Maximus's report, the OFIR order's summary of respondent's arguments stating that respondent's "medical consultants" and PROM only "reviewed the records through March 25, 2010," and that "there were no records provided for the time period of March 25 through April 6, 2010 to determine if skilled care was provided" should have alerted respondent to a problem. In fact, respondent provided information covering petitioner's care from March 25, 2010, through April 6, 2010, including information regarding a feeding tube, but neither Maximus nor the OFIR made reference to the need for a feeding tube and how this would be administered without skilled nursing care, despite the fact that Maximus discussed other aspects of petitioner's daily needs. The gist of the trial court's reasoning in granting an award of attorney fees and costs was that respondent could not have reasonably believed that the pertinent documents had been considered because it was patently unreasonable to conclude that a feeding tube could be administered without skilled nursing care.

Under the circumstances, we are not "left with a definite and firm conviction" that the trial court's reasoning was a "mistake." *Kitchen*, 465 Mich at 661-662. Therefore, we affirm the trial court's finding of a frivolous defense. Further, such reasoning is analogous to a finding that respondent's "argument [or] brief . . . was grossly lacking in the requirements of propriety . . . or grossly disregarded the requirements of a fair presentation of the issues to the court" under MCR 7.216(C)(1)(b).

## C.  REASONABLE AMOUNT OF FEES AND COSTS AWARDED

Finally, respondent argues that the trial court abused its discretion in calculating the amount of attorney fees and costs to be awarded. We disagree.

We review a challenge to an award of attorney fees and costs for an abuse of discretion. *Kernen v Homestead Dev Co*, 252 Mich App 689, 691; 653 NW2d 634 (2002). The party seeking fees bears the burden of proving what fees are reasonable. *Smith v Khouri*, 481 Mich 519, 532; 751 NW2d 472 (2008). If a factual dispute exists regarding the amount of fees requested, the trial court settles the dispute by holding an evidentiary hearing. *Id.*

"To ascertain a reasonable attorney fee, courts begin by determining the fee customarily charged in the locality for similar legal services . . . , us[ing] 'reliable surveys or other credible evidence of the legal market.' " *Ford Motor Co v Dep't of Treasury*, ___ Mich App ___; ___ NW2d ___ (2015) (Docket No. 322673), slip op at 8, quoting *Smith*, 481 Mich at 530-531. Then, the trial court multiplies this rate "by the reasonable number of hours expended" to resolve the matter, to determine "the starting point for calculating a reasonable attorney fee." *Smith*, 481 Mich at 530-531. After arriving at this starting point, trial court should "make adjustments . . . based on the factors" articulated in *Wood v Detroit Auto Inter-Ins Exch*, 413 Mich 573, 588; 321 NW2d 653 (1982), and MRPC 1.5(a). *Ford Motor Co*, slip op at 8.

In *Wood*, 413 Mich at 588, the court listed the following factors used to assess reasonable attorney fees: "(1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client." (Internal citations and quotation marks omitted). A "trial court is not limited to [the

*Wood*] factors" and "the trial court need not detail its findings on each specific factor considered." *Smith*, 481 Mich at 529 n 14. However, "to aid appellate review, the [trial] court should briefly address on the record its view of each of the factors." *Id*.

When considering factor (3), "the amount in question and the results achieved," *Wood*, 413 Mich at 588, trial courts may consider the proportion of the prevailing party's success, rather than the dollar amount received. For example, the court in *Schellenberg*, 228 Mich App at 47, found that the trial court did not abuse its discretion in "determin[ing] that [a] plaintiff should be awarded ninety percent of [her] requested amount because . . . plaintiff was ninety percent successful in her appeal." Additionally, when faced with a large amount of fees in light of a small recovery, the Court in *Tinnin v Farmers Ins Exch*, 287 Mich App 511, 522; 791 NW2d 747 (2010), found that the trial court did not abuse its discretion in awarding attorney fees when the court explained "that [it] did not want to deter plaintiffs in general from bringing claims for benefits that are unreasonably withheld by their insurers."

In this case, respondent appears to challenge the initial starting point for calculating reasonable attorney fees by arguing that the number of hours billed was unreasonable, arguing that petitioner's counsel did not reduce the actual amount of hours worked to a reasonable number to be billed to the client. However, William Schlecte testified that when he provided his firm's billing statement to the trial court, he had already reduced the hours he had worked and the hours that attorney Jeffrey Frounfelker had worked. Moreover, the trial court specifically referenced Schlecte's testimony about a reduction in the amount billed.

Respondent's argument that petitioner cannot recover the costs and fees associated with petitioner's motion for attorney fees pursuant to *Adair v Michigan (On Remand)*, 298 Mich App 383, 398; 827 NW2d 740 (2012), rev'd on other grounds 494 Mich 852 (2013), and *In re Sloan Estate*, 212 Mich App 357, 361-363; 538 NW2d 47 (1995), is unpersuasive. The cited cases address different exceptions to the American rule regarding an award of costs and attorney fees that do not control awards under MCL 600.2591(1) or MCR 7.216(C)(1)(b). *Adair*, 298 Mich App at 398 (analyzing fees awarded pursuant to Const 1963, art 9, §§ 32 and 33); *Sloan*, 212 Mich App at 361-363 (analyzing fees awarded pursuant to MCL 700.543). Therefore, *Adair* and *Sloan* do not control. The trial court did not abuse its discretion in determining the starting point for fees to be awarded. *Smith*, 481 Mich at 530-531.

When addressing the *Wood* factors, respondent argues that factors one through four support a reduction in fees awarded. We disagree. The trial court indicated that it considered each of these factors, and considered the parties' pleadings, which include arguments regarding these factors.

With regard to the professional standing and experience of the attorneys, factor (1), *Wood*, 413 Mich at 588, petitioner explained how each attorney's experience correlated with his billed hourly rate: Frounfelker, who had practiced since 2010, billed at $100 an hour, Andrew Campbell, who had practiced in Michigan since 2010, billed at $150 an hour, and Schlecte, who had practiced since 1972, billed at $250 an hour. Then, petitioner compared these hourly rates to the customary area rate for a similar type of work and experience, citing *Economics of Law Practice in Michigan: 2010 Attorney Income and Billing Rate Key Findings Report*, Michigan

Bar Journal (Feb 2011). The trial court correctly noted that, from the evidence, Schlecte's rate represented a reduced rate.[5]

When considering the skill, time, and labor involved, factor (2) in *Wood*, the trial court placed particular emphasis on the fact that "the product that [was] filed in [the trial c]ourt [was] vastly reduced from even initial drafting," reasoned that "distillation of the law and the fact is truly the art of advocacy," which "require[s] time[,] a critical eye[, and] constantly going back and reviewing," and approved of the additional and necessary research. Such conclusions correspond with petitioner's argument that the administrative appeal was tedious, involved an attention to detail, and required review of complex documents.

When considering the amount in question and the results achieved, factor (3) in *Wood*, petitioner's counsel argued that petitioner received 100% of the result requested: respondent was ordered to pay for the cost of her stay at the SNF until April 6, 2010. The trial court stated that it considered "the measure of success in the amount that's achieved [and] the results gained . . . ." When considering the holding in *Schellenberg*, 228 Mich App at 47, it makes sense that the trial court awarded petitioner's counsel 100% of the fees requested in light of the fact that petitioner received 100% of the result requested. Further, like the court in *Tinnin*, 287 Mich App at 522, the trial court found unpersuasive respondent's argument that petitioner's counsel should not be able to recover attorney fees exceeding the damages recovered, reasoning that fee recovery cannot be tethered to damages recovered "because otherwise . . . we would preclude the ability for parties to have a decision or access to justice."

When considering "the difficulty of the case," factor (4) in *Wood*, the trial court referenced "the degree of difficulty" and, as noted, it referenced the time taken to distill arguments and the time required to stay up-to-date with developing case law. Such findings, again, correspond with petitioner's argument that the administrative appeal was tedious, involved an attention to detail, and required review of complex documents.

Respondent did not challenge the trial court's award on the basis of factors (5) and (6) in *Wood*. Therefore, when considering the *Wood* factors, the trial court did not abuse its discretion in awarding petitioner $44,760.30 in fees and costs.

### III. CONCLUSION

Although MCL 600.2591 does not allow for sanctions to be awarded in this case, we nonetheless uphold the sanctions because the definition of a frivolous defense under MCL 600.2591 is comparable to the definition of a vexatious appeal under MCR 7.216(C)(1)(b). Moreover, the trial court did not clearly err in finding frivolity in defendant's arguments. Further, we find that the trial court did not abuse its discretion in calculating the amount of attorney fees and costs to be awarded.

---

[5] The evidence showed that the rates for the other attorneys had also been reduced.

Affirmed.

/s/ Patrick M. Meter
/s/ Jane M. Beckering